15279

POOLE v. EDWARDS

(15 S. E. (2d), 349)

August, 1940.

*Mr. Robert B. Paslay* and *Mr. Robert B. Paslay, Jr.,* both of Spartanburg, for appellant,

*Mr. C. C. Brown* and *Messrs. Lambright & Sams,* all of Spartanburg, for respondent,

June 10, 1941.

The opinion of the Court was delivered by Mr. Chief Justice Bonham.

The respondent claims a right-of-way by easement over the lands of the appellant. She brought action against appellant, alleging that such right-of-way had been in use for more than twenty years and was appurtenant to her land, and she also claims the right-of-way as of necessity. She also alleges that the appellant willfully, wantonly, and with intent to damage the plaintiff, obstructed and blocked the road leading to plaintiff's land, by plowing up the said road, leaving plaintiff no means of ingress or egress to and from her said property. It is further alleged that in consequence of such obstruction, plaintiff's land having no other means of ingress to or egress from her property, she has been unable to sell the same, and has been unable to cultivate it. She asks damages, actual and punitive, in the sum of $1,500.00.

The answer sets up a general denial except as admitted. He admits the allegation of Paragraph 2 of the complaint to the effect that on May 2, 1933, the plaintiff purchased the land consisting of 16.67 acres from Una B. Koon, but has not information to form a belief as to the remainder of Paragraph 2. He denies Paragraphs 3, 4, and 5 of the complaint. He further alleges that if there has been any interference with the plaintiff's alleged road or right of ingress and egress to plaintiff's property, it has not been done by this defendant, and that the defendant is under no obligation to furnish to the plaintiff any road or right-of-way to her premises. That defendant was occupying his premises that adjoins in part the premises of plaintiff long before the plaintiff purchased the land described in the complaint, and no

way of ingress or egress to plaintiff's property has been interfered with by defendant.

The case was heard in the County Court of Spartanburg County by Judge Merchant and a jury, and resulted in a verdict for plaintiff in the sum of $450.00.

Defendant made a motion for nonsuit, and for a directed verdict, both of which were refused, as was the motion for a new trial made at the end of the trial.

Defendant appeals to this Court upon several exceptions, which, he states in his brief, makes these questions for determination by this Court, viz.:

1. Was it error to refuse defendant's motions for nonsuit and directed verdict?

2. Did his Honor err in his charge to the jury as to easement by prescription, and as to that of necessity?

3. Did his Honor err in refusing defendant's motion for a new trial, there being no testimony to sustain a verdict of $450.00?

It may be well to determine what is the correct definition of easement or right-of-way by prescription, or by way of necessity, since plaintiff claims such easement on both grounds.

"To establish a right by prescription, it is necessary to prove three things: (1) The continued and uninterrupted use or enjoyment of the right for the full period of 20 years; (2) the identity of the thing enjoyed; (3) that the use or enjoyment was adverse, or under claim of right * * *. While it is true that, when it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of twenty years, the use will be presumed to have been adverse, so as to cast upon the owner of the servient estate the burden of rebutting the presumption * * *." (*Williamson v. Abbott,* 107 S. C., 397, 400, 93 S. E., 15; citing a number of authorities from this jurisdiction, including *Lawton v. Rivers,* 13 S. C. L., 445, 2 McCord, 445,

13 Am. Dec., 741, in which the question of easement by prescription and by necessity was fully discussed by the Constitutional Court of South Carolina in 1823, wherein it said: "The definition of prescription is 'a title acquired by use and time, and allowed by law;' * * *.'")

The same authority gives this definition of a right-of-way by necessity: "A right-of-way from necessity, is where a man having several tracts of land, sells one which is surrounded by the others, having no way of ingress and egress but through one of those reserved. So, even if he reserves the tract in the middle for himself, he is entitled to a way through necessity. * * * So, where a part of a man's land is taken from him by operation of law, as under a sale by execution, leaving him no way of egress, the law will allow him one from necessity; * * *. To establish such right, nothing is required but to show the necessity * * *.''

In the case of *Brasington v. Williams et al.*, 143 S. C., 223, 141 S. E., 375, the question of right-of-way by prescription and from necessity was fully discussed by the justice who wrote the opinion and who was an acknowledged master of the law of real estate as it relates to easements. He said: "The plaintiff seeks to establish his easement of a right-of-way upon two grounds: (1) That he is entitled to it as a right-of-way of necessity; (2) that he is entitled to it as a right-of-way, appurtenant to his land, by prescription * * * but it is conceded that both Brasington and she (Mrs. Williams) claim from a common source of title, General Chestnut."

It may not be amiss to say here that plaintiff and defendant in the present action claim from a common source of title, viz., one Caldwell.

Quoting with approval from *Lawton v. Rivers, supra,* Justice Cothran said: "The necessity by which a person derives a right-of-way, is when one person sells to another lands inclosed on all sides by other lands. Here the law im-

poses an obligation on the seller to allow the purchaser a right-of-way over his adjacent land. * * * This is also said to be a right by grant, because the law implies a *tacit* consent on the part of the seller that the purchaser shall have free ingress and egress to and from the land so situated. * * *." Citing *Turnbull v. Rivers,* 3 McCord, 131, 132, 15 Am. Dec., 622.

Having seen what is the law which defines a right-of-way by prescription and a right-of-way from necessity, let us see if there is evidence on the matter. Let it be remembered that the question of the sufficiency of that evidence is not for us, but is solely for consideration and determination of the jury.

It does not appear that appellant alleges any specifications of error in the admission or rejection of testimony.

Was there evidence relating to the claim of right-of-way by prescription?

Miss Bessie Poole, being sworn, testified:

"Q. At the time you purchased the land, was there any way to get to it? A. Yes, sir.

"Q. How? A. The old road went through Mr. Edwards' yard down across into the field. * * *

"Q. Was it a road or a path? A. A road.

"Q. At the time you purchased it, was the road open? A. Yes, you could go through to go down to the place. * * *

"Q. Was that the only road leading to this place? A. Well, that is the road that I know of."

Roy Caldwell, being sworn, testified:

"Q. Do you know the place now owned by Mr. Edwards, the defendant in this action? A. Yes, sir.

"Q. Why do you know it? A. Because I was raised there. * * *

"Q. How long did you live there? A. Thirty years.

"Q. Do you know who bought it? A. Mr. Edwards.

"Q. * * *. Do you know this tract of 16 acres down back of the place, and now owned by Miss Bessie Poole? A. Yes, sir.

"Q. Who farmed on that? A. My brother used to own it.

"Q. Where did he get it? A. From my daddy.

"Q. Was there any way to go from the highway when you were there to this 16 acre tract? A. Not through the road, but they went through a road through the home place yard.

"Q. Down to the 16 acre tract. Who made that road, or had it made, if you know? A. My daddy, I suppose. It was always there.

"Q. How long have you known the road? A. Thirty years.

"Q. Was it used all during that time to go to this tract? A. Yes, sir.

"Q. To your certain knowledge? A. Yes, sir.

"Q. Do you know of any other way to get to that tract? A. No, sir, that was the only road.

"Q. There was something said about the road between Bynum's home and down there to that place. Do you know of any such road? A. No, sir, there was a path down there.

"Q. Could a vehicle get over it? A. No, sir.

"Q. * * * Did they use this road going down there through your daddy's yard, down to this place? A. Yes, sir.

"Q. How long was it used? A. I know it was used thirty years.

"Q. Was it open when you left there? A. Yes, sir. * * *

"Q. Was it used by the public? A. Yes, sir * * *.

"Q. Did anyone use it besides your brother? A. Yes, sir.

"Q. It was used by the public and has been there thirty years and was open when you left there? A. Yes, sir.

"Q. Do you know of your own knowledge what year your father gave that land to your brother? About 1906, I think."

Claude Cole, being sworn, testified:

"Q. What relation are you to Miss Bessie Poole? A. She is my sister-in-law.

"Q. Do you remember when she bought this little tract out there? A. I remember the time.

"Q. Did you ever go down to see it? A. Yes, sir.

"Q. How did you get there? A. In an automobile.

"Q. Where was the road? A. Through Mr. Edwards' road, leaving the highway * * *.

"Q. Was it harvested? (Meaning the crop on the 16 acres). A. No, sir.

"Q. Why not? A. He had no objection to my going through, he said I could, but he did not want negroes going through and they did not go through.

"Q. Have you seen it or did you cultivate it next year? A. No, sir.

"Q. Why not? A. We had no way to get to it.

"Q. What happened to the road? A. It was plowed up half way across the road.

"Q. On whose land? A. Mr. Edwards'."

We need not recite more of the testimony as it relates to a right-of-way by prescription and from necessity.

There is more in plaintiff's behalf, and there is contradictory evidence; and that makes the issue which requires all the evidence to be submitted to the jury. The trial Judge was correct in doing so.

We do not think there was any error in the charge of the Court as to easement by prescription and by necessity. Counsel's requests were all charged by the Court, and when appellant made the motion for a new trial, he pointed out no error in the charge. We have carefully read the charge as a whole, as it should be read, and find it to be a clear, comprehensive, and concise statement of the law applicable to the issues made by the pleadings and the evidence.

Appellant argues that there is no evidence to sustain the finding of punitive and special damages. We think there was such evidence. Mr. Edwards objected to Miss Poole using the road through his yard. He forbade her tenant, Mr. Cole, from using the road, and thus prevented the gathering of the crop planted on the Poole place.

This road was plowed up on Mr. Edwards' land. It is a fair inference that it was done by Mr. Edwards, or at his instance. There was evidence from which the jury might well infer that Mr. Edwards was actuated by willful and wanton motives which would sustain the verdict for punitive damages, though it does not appear from the record that the jury included punitive damages in its verdict. But be that as it may, there is evidence upon which they could have predicated such finding. There is also evidence to sustain a finding of special damages.

Miss Poole paid $300.00 for the place. When she tried to sell it for that sum after Mr. Edwards had forbidden her to use the road through his place, she could not do so. Mr. Edwards himself declined to buy it.

Mr. Willard, a real estate man for forty years, had this place in his hands to sell. He has not been able to do so. He testified that: "If there was a road twenty feet, so you could pass, I would rather have it for sale at $750.00 than $250.00 as it is."

There is also evidence of the loss sustained by respondent from the fact that she could not cultivate the land, and could not rent it for cultivation.

All exceptions are overruled, and the judgment is affirmed. MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.