## 15672

### SANITARY & ASEPTIC PACKAGE CO. v. SHEALY
(31 S. E. (2d), 253)

*Messrs. Wise & Whaley, Mr. Turner Logan,* and *Mr. Fred D. Townsend,* all of Columbia, S. C., Counsel for Appellant,

*Messrs. Thomas, Cain & Black,* of Columbia, S. C., Counsel for Respondent,

August 15, 1944.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court.

This appeal involves the right of respondent to the use of a right-of-way or driveway, claimed to have been acquired by prescription, over a lot belonging to appellant in the City of Columbia.

Respondent owns a lot which fronts 52 feet on Sumter Street and extends back toward Main Street a distance of approximately 217 feet. Appellant's lot fronts 48½ feet on Main Street and extends back toward Sumter Street approximately 208 feet. The two lots adjoin each other in the rear where they have a width in common of approximately 48 feet. They are located in the block bounded north by Scott Street, east by Sumter Street, south by Elmwood Avenue and west by Main Street. The rearmost 50 feet of respondent's lot is entirely covered by a one-story frame and metal building, constructed during the year 1917, which extends across the full width of the lot. When this building was constructed, the only entrances provided were two doors on the west side, opening into the rear of appellant's lot and reached by a driveway running from Main Street along the northern edge of appellant's lot and terminating at the entrances to this building. This controversy hinges upon the right of respondent to the use of this driveway for the purpose of ingress and egress to and from this building. Respondent claims such use has been acquired by prescription.

The issues in the case were referred to the Master who held that respondent had acquired a right by prescription to the use of this driveway and recommended that appellant be permanently enjoined from interfering with such use. The trial Judge, before whom the case was heard on exceptions by appellant to the report of the Master, in a formal order

confirmed the report of the Master and awarded to respondent a permanent injunction. From this order appellant has appealed.

The facts are in the main undisputed. The two lots constituted only one and the ownership was undivided for a period of more than 40 years preceding the year 1909. They were owned by Richard O'Neal, Jr., from 1866 to 1885, and from 1885 to 1907 by Andrew Crawford. In an action to marshal the assets of the estate of Andrew Crawford, who died in 1907, the single lot was ordered to be divided by a line midway between and parallel to Main and Sumter Streets and to be sold as two parcels. This was done and both parcels were sold in 1909. By various mesne conveyances the two lots have come down to the present owners and no reference is made in any of these conveyances in either chain of title to the claimed right-of-way. However, in connection with the sale of the property by the Master in 1909, notice was given that the warehouse on the lot now owned by appellant "together with the right to use the strip of land north of it as a wagon way" was then under lease. Perhaps the oldest building on either lot is a one-story brick building fronting on Main Street, and located on appellant's lot. It was this building which the Master was referring to as being under lease when the sale was made by him. During the period when this property was owned by Richard O'Neal, Jr., he used the brick building as a cotton establishment. Cotton was bought by him and the driveway was used by wagons and pedestrians in going from Main Street to this place of business. One witness stated that this driveway had been so used for 50 years or longer.

Immediately to the rear of the one-story brick building on appellant's lot is a one-story frame building, but the testimony does not disclose when it was constructed. These are the only two buildings located on appellant's lot. There are also two buildings located on the lot of respondent, one being the building constructed in 1917 and the other a one-story

frame building fronting on Sumter Street. The latter building was constructed some time prior to 1911 and entrance to same is gained from Sumter Street.

The building of respondent which was constructed in 1917 has been used wholly or in part as a machine shop since it was erected. When this action was commenced a portion of it was used for storage by certain tenants and the remainder as a machine shop. The testimony abundantly shows that since 1917, the driveway in question has been used continuously, uninterruptedly, under a claim of right, by the operators of the machine shop and their customers for the purpose of going from Main Street to this building. In fact, prior to the commencement of this action this was the only way that vehicles could gain access to the entrance to said building. This action was commenced in 1938, showing such use of said driveway for a period of 21 years. Respondent acquired a one-half interest in the property in 1917 and the remaining one-half interest in 1920, so that respondent has owned its lot in whole or in part during said entire period.

The exceptions on appeal raise some questions which were not raised in the exceptions to the report of the Master. We can only consider such questions as were presented in the Court below. *Verner et al. v. Perry et al.*, 45 S. C., 262, 22 S. E., 888. Some of appellant's exceptions raise wholly immaterial questions and others are rather vague and indefinite. The brief of appellant does not separately state the various questions involved. For these reasons, we have encountered some difficulty in ascertaining the issues sought to be raised. However, we gather that appellant relies upon three grounds for a denial to respondent of a prescriptive right to the use of said alleyway. It is contended that, (1) during a portion of the period the use by respondent was permissive; (2) for several years of the period when respondent claims that the use was adverse, the owner of the dominant estate was a tenant of the owner of

the servient estate, thereby breaking the continuity of the period; and (3) respondent is estopped to assert any claim to pass over the lot of appellant by reason of the construction of the building in 1917 across the entire lot, thereby destroying an outlet from appellant's lot to Sumter Street.

The elements necessary to constitute a right by prescription have been well established in this jurisdiction since the early case of *Lawton v. Rivers,* 13 S. C. L., 445, 2 McCord, 445, 13 Am. Dec., 741. This case has been consistently followed in a long line of decisions. *Craven v. Rose,* 3 S. C., 72; *Williamson v. Abbott et al.,* 107 S. C., 397, 93 S. E., 15; *Poole v. Edwards,* 197 S. C., 280, 15 S. E. (2d), 349, and *Steele v. Williams,* S. C., 28 S. E. (2d), 644. These elements are stated in the case of *Williamson v. Abbott, supra,* in the following language:

"To establish a right by prescription, it is necessary to prove three things: (1) The continued and uninterrupted use or enjoyment of the right for the full period of 20 years; (2) the identity of the thing enjoyed; (3) that the use or enjoyment was adverse, or under claim of right." The Court there further said: "When it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of 20 years, the use will be presumed to have been adverse, so as to cast upon the owner of the servient estate the burden of rebutting the presumption."

In support of the contention that the use was permissive, appellant relies on certain testimony of William H. Frost. Mr. Frost owned appellant's lot from 1911 to 1913 and was a stockholder in the Regal Realty Co., which owned this lot from 1916 to 1931. Mr. Hugh E. Sessions was part owner of respondent's lot from 1911 to 1917 and was the principal stockholder in the respondent corporation. Mr. Frost testified on direct examination as follows:

"At one time I owned the property now owned by Mrs. Shealy. I think Mr. Sessions owned the property back of my lot. He made use of this alleyway. I suppose they all made use of it, I gave Mr. Sessions permission to use it, I didn't consider it mine but I gave him permission to use it. I considered he had a right to use it and that I had no right to prevent him from using it. As to whether anyone who had occasion to go to the Sessions property through the driveway went through it as it suited them, there was no interference at all, they came and went as they wished."

On cross examination, he said:

"He came and asked me if that was a public driveway and I said so far as I know it is and he asked if I would give him permission to use it and I told him I could not deny him permission to use it."

It is not clear whether the above conversation occurred before or after the construction of the building in 1917. In any event, we do not think the foregoing shows a permissive use, but tends to substantiate the claim of respondent that the use was under claim of right. The right to the use of this entrance was clearly recognized and acquiesced in by Mr. Frost. It is evident that the word "permission" was not used in its legal sense, but the so-called consent or permission was merely an acquiescence in, and recognition of, a right which the owner of the servient estate thought that the owner of the dominant estate possessed as a matter of law. There is no just foundation for the contention that the use of the alleyway was in its legal sense by permission or under a license. *Wade v. Moore et al.*, 139 Va., 765, 124 S. E., 201.

The next contention is that the claimed adverse period of twenty years was interrupted by a unity of possession of the dominant and servient estates. It appears that for several years, beginning about 1922, Mr.

Sessions was a tenant of the buildings on appellant's lot, although the Master correctly held that "the extent and nature of his tenancy has never been made apparent." It further appears that at the same time Mr. Sessions owned, with the exception of two shares, all of the stock of the respondent corporation, the owner of the other lot, and that the respondent corporation was a holding company organized by Mr. Sessions and, no doubt, dominated and controlled by him.

The fact that Mr. Sessions owned all of the stock in the respondent corporation, except two shares, does not alter the fact that the title to the property was vested in the corporation and not in Mr. Sessions and does not have the effect of destroying the corporate entity. Of course, there are exceptions when the corporate entity will be disregarded, but none of these exceptions apply here. On this question see 13 American Jurisprudence, page 159; and annotations in 1 A. L. R., page 610 and 34 A. L. R., page 597. We do not think that under the circumstances it can be soundly held that there was any break in the continuity of the adverse use. *Pearce v. McClenaghan,* 39 S. C. L., 178, 5 Rich., 178, 55 Am. Dec., 710.

On the question of estoppel, appellant, while denying that there was ever any public way, asserts in her brief that any prescriptive public right "was entirely defeated when plaintiff erected a building on the western end of its lot, and plaintiff cannot destroy a public alleyway by blocking it on his own premises and at the same time acquire private rights in the remainder of the alley on the adjoining land which belongs to the defendant. The plaintiff is now estopped to claim private rights over the defendant's land. In blocking alley the plaintiff destroyed the defendant's outlet to Sumter Street."

We agree with appellant that the evidence is entirely insufficient to show that there ever existed a public way from Main Street to Sumter Street along the

driveway in question. The only testimony on this point is that of Mr. Frost who stated that at the time the cotton establishment was being operated, wagons went through from Main Street to Sumter Street. However, he does not testify as to the length of time the wagons were used in this manner, and stated that he never investigated the extent of the distance that the driveway was used. His testimony is merely to the effect that "I expect it extended through to Sumter Street." But it seems to us that the fact that there was never any public way from Main to Sumter Streets militates against, rather than supports, the contention of appellant that respondent is estopped to claim a way of any kind over appellant's land. Obviously, the construction of the building in 1917 across the entire width of respondent's lot could not have the effect of destroying a public alleyway when none ever existed.

Although there is testimony to the effect that this alley was used as a driveway for years prior to 1917 and its identity was recognized by the Master when the property was divided and sold under order of Court in 1909, we do not think it is necessary to go behind the year 1917, as the evidence shows an open, exclusive, uninterrupted, continuous, and adverse use of this alleyway for the purpose of ingress from Main Street to this frame and metal building from its construction in 1917 to the time of the commencement of this action—a period of 21 years. When appellant acquired this property in 1935 this driveway was plainly visible and the building itself, with its only entrances opening into the rear of appellant's lot, was sufficient to charge appellant with notice of the use of this alley for the purposes stated.

Since this action was commenced, a door has been cut on the eastern side of this building. This door opens into respondent's lot and can be reached by a new driveway from Sumter Street. This entrance can be used, however, only

for the purpose of serving the tenants on one side of this building and it is still necessary for the driveway in question to be used for the purpose of serving other tenants of the building. This fact probably prompted the suggestion in one of the exceptions that entrance could now be gained to this building from Sumter Street. This point is not argued in appellant's brief and, therefore, may be deemed as abandoned. However, we do not understand that respondent is claiming a right-of-way from necessity.

It further appears that since this action was commenced respondent has conveyed the premises involved to the heirs at law of Mr. Sessions, who formerly owned all of the stock of respondent corporation with the exception of two shares, and that this was done in the settlement of the estate of Mr. Sessions. Accordingly, these new grantees have been substituted as plaintiffs in the place of the respondent corporation. Counsel agreed that for convenience the title of the case would not be changed. The effect, if any, of this conveyance on the rights of the parties is not discussed by counsel and, therefore, need not be considered.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE G. DUNCAN BELLINGER, ACTING ASSOCIATE JUSTICE, concur.