492 S.E.2d 420

Michael R. MORROW and Johnnie Ruth Morrow, Appellants,

v.

Terrell H. DYCHES, Jr., and Dyches
Constructors, Ltd., Respondents.

No. 2729.

Court of Appeals of South Carolina.

Heard Sept. 9, 1997.
Decided Sept. 29, 1997.

Walter Bedingfield, of Bedingfield & Williams, Barnwell, for appellants.

W. Joseph Moore, Jr., of Cooper, Coffas & Megna, Columbia, for respondents.

CURETON, Judge.

Michael and Johnnie Ruth Morrow (the Morrows) appeal from the special referee's order denying them an easement over adjoining property by either prescription, necessity, grant, or reservation. We affirm.

## I. FACTS

The Morrows are the owners of real property in Hilda, S.C., on which they operate a small grocery store. Although S.C. Route 304 borders the Morrows' property on its eastern side, the northern and western sides of the property are bordered by parcels owned by Terrell Dyches, Jr. (Dyches), and the southern side of the Morrows' property is bordered by a tract owned by Dyches's company, Dyches Constructors, Ltd. (Constructors).

In the late 1800's, George H. Hartzog owned the Morrows', Dyches's, and Constructors' respective parcels. The Morrows' title runs from Hartzog's heirs and family to Ansel Still and then Raymond Still, whose corporation sold the Morrows their tract in October 1992. Dyches can trace the northern and western properties from the Hartzog family to B.A. Morris, who was Dyches's vendor. In October 1898, the Atlantic Coast Line Railroad Company of South Carolina (ACLR–SC) acquired by deed a fee simple interest in the southern tract from George H. Hartzog, and a railway was built on the tract. Through a long series of name changes and mergers, ACLR–SC eventually became CSX Transportation, Inc. (CSX). CSX used this southern parcel (the CSX tract) as a railway until 1989, when the tracks were removed. In April 1994, CSX sold the CSX tract by quitclaim deed to Constructors.

It is the CSX tract which is the subject of the dispute in this case. Evidently, a gas station was operated on the Morrows' tract from 1937 to 1958, and a grocery store has operated on the tract from 1958 to the present. Throughout this time, the store's customers used the CSX tract for parking, and large tractor-trailers used the CSX tract to access the rear door of the store for deliveries. After Constructors bought the CSX tract, however, Dyches became concerned about potential liability resulting from use of the property. The parties negotiated, and after the Morrows rejected Dyches's offer to lease them the tract for $500 per month, Dyches erected a large fence along the border between the parcels.[1] Since the erection of the fence, access to the rear of the store has been impossible, and the store's suppliers have had to make their deliveries through the front door. Due to the lack of space, large tractor-trailers have had to park with a portion of their vehicles blocking the roadway. However, this practice has nearly caused accidents, and the highway patrol has notified delivery drivers that it will ticket them if they continue to block a portion of the roadway. The Morrows did stipulate that, at the time they purchased the property, a 25.4 foot gap existed between the store and the northern border of the parcel. While this gap has since been blocked by the Morrows' construction of improvements, Mr. Morrow testified that trucks could not have used this gap in any event.

The special referee ruled that the Morrows were not entitled to an easement over the CSX tract by either prescription, necessity, grant, or reservation.

## II. SCOPE OF REVIEW

The determination of the existence of an easement is a question of fact in a law action. *Jowers v. Hornsby*, 292 S.C. 549, 357 S.E.2d 710 (1987). The present matter was consensually referred to a special referee for entry of final judgment. Accordingly, our scope of review is limited to correction of errors of law, and we will not disturb the referee's factual

---

1. Evidently, Dyches operated a store on his property which competed with the Morrow's store, but he closed the business due to lack of profitability.

findings that have some evidentiary support. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

## III. EASEMENTS BY PRESCRIPTION, NECESSITY, OR EQUITY

█ The Morrows first argue that the special referee erred in applying the rule in *Blume v. Southern Ry. Co.,* 85 S.C. 440, 67 S.E. 546 (1910), that no person may acquire an easement by prescription over a railroad's property through a use inconsistent with the railroad's use. The Morrows argue that they have satisfied the requirements for a prescriptive easement, and contend the *Blume* rule is inapplicable if the railroad obtained a fee simple deed for the tract, as opposed to acquisition of the property through condemnation or statutory grant.

█ We hold that the Morrows failed to satisfy the requirements for a prescriptive easement regardless of application of the rule in *Blume.* To establish a prescriptive easement, one must show: (1) continued use for 20 years, (2) the identity of the thing enjoyed, and (3) use which is either adverse or under a claim of right. *See Horry County v. Laychur,* 315 S.C. 364, 434 S.E.2d 259 (1993); *Revis v. Barrett,* 321 S.C. 206, 209 n. 1, 467 S.E.2d 460, 462 n. 1 (Ct.App. 1996). A party may "tack" the period of use of prior owners in order to satisfy the 20–year requirement. 25 Am.Jur.2d *Easements and Licenses* § 70 (1996). The party claiming a prescriptive easement has the burden of proving all elements. *Cf. Davis v. Monteith,* 289 S.C. 176, 345 S.E.2d 724 (1986) (adverse possession); *Babb v. Harrison,* 220 S.C. 20, 66 S.E.2d 457 (1951) (The claimant "carries with her the burden of proving that the use of such disputed area was adverse for the full period of twenty years in order to establish an easement by prescription."). *But see Sanitary & Aseptic Package Co. v. Shealy,* 205 S.C. 198, 31 S.E.2d 253 (1944); *Poole v. Edwards,* 197 S.C. 280, 15 S.E.2d 349 (1941) (noting that if a claimant shows that the use was open, notorious, continuous and uninterrupted, then the burden shifts to the title owner to rebut a presumption that the use was adverse).

In the present case, Mr. Morrow testified that for the fifteen years he has resided in the Hilda area, the store's

customers have used the CSX tract for parking, and the general public has parked there during town festivities. He stated that he and the railroad company never discussed his use of the CSX tract for rear access and parking. Mr. Morrow admitted his deed and plat do not indicate he bought property on or use of the CSX tract, but he stated "we always assumed to have usage of that." He testified he assumed he had a right-of-way because "the railroad had always provided that; it had always been used for that purpose," and he also was under the impression that his vendor, Raymond Still, had a right-of-way across the CSX tract. Mayor McClary of Hilda testified that, to the best of his knowledge, the CSX tract had been used by suppliers and customers of the store for the more than 50 years of operation. Finally, Dyches, a resident of the Hilda area for 41 years, testified he was aware that trucks, customers, and the public used the CSX tract for parking and access to the store.

The foregoing evidence is insufficient to establish an easement by prescription. Even if we suppose Mr. Morrow's use was adverse, no evidence indicates that the use of the Morrows' predecessors-in-interest was anything more than permissive, as evidence establishing the mere fact of use does not necessarily equate with evidence establishing the character of such use. *Cf. Knox v. Bogan*, 322 S.C. 64, 70, 472 S.E.2d 43, 47 (Ct.App.1996) ("Under the majority view an actual, exclusive, open and notorious possession without the consent of the title owner is both wrongful and adverse and will ripen into perfect title in the usual way when the statute of limitations has run."). A party's use must meet all requirements throughout the 20–year period, and if tacking is used, "the use by the previous owners must also meet the requirements of a prescriptive easement." 25 Am.Jur.2d *Easements and Licenses* § 70, at 640 (1996). It possibly could be contended that Morrow's belief that he had a right-of-way was sufficient for a prescriptive easement pursuant to a "claim of right." *See Revis v. Barrett*, 321 S.C. 206, 210, 467 S.E.2d 460, 462 (Ct.App.1996) (noting that "Revis was under the impression that she had a continuing right to use the road," and "there was certainly ample evidence to support the master's finding Revis's belief about her right to use the road flowed from a 'claim of right'"). However, the only evidence

regarding Morrow's predecessor-in-interest was that Morrow "thought" Raymond Still had a right-of-way across the property. This evidence is insufficient to establish that Still had a belief amounting to a claim of right, and again, tacking requires proof of sufficient use for predecessors-in-interest as well. Since the Morrows had the burden of establishing their entitlement to a prescriptive easement, and they have only owned the property since October 1992, their claim fails.

Similarly, we agree with the trial court's ruling that the Morrows failed to satisfy the requirements of an easement by necessity. There are three elements for an implied easement by necessity: (1) unity of title, (2) severance of this title, and (3) necessity. *Brasington v. Williams,* 143 S.C. 223, 141 S.E. 375 (1927). Only reasonable necessity is required; thus, the easement must be more than merely convenient, but it does not need to be absolutely essential. *Jowers v. Hornsby,* 292 S.C. 549, 357 S.E.2d 710 (1987). However, the whole point of the easement by necessity doctrine is to ensure that landlocked parcels have access to a public road; thus, the doctrine presumes or implies that the grantor intended for the grantee of a landlocked parcel to have access, which is one of the rights essential to the enjoyment of land. *Brasington,* 143 S.C. at 238–39, 141 S.E. at 380. Although the Morrows claim necessity because they wish to use the CSX tract for large tractor-trailers to access the rear of their store, their claim fails because the entire eastern side of their tract borders on and is accessible by a public road. The doctrine only provides reasonable access to the dominant estate when there is none; it does not provide a means for ensuring a preferred method of access to a particular portion of a tract when access to the tract is otherwise available. *Cf. Hayes v. Tompkins,* 287 S.C. 289, 337 S.E.2d 888 (Ct.App.1985) (easement by necessity across adjoining land was upheld because a deep gully separated the dominant estate from a bordering public road). Moreover, the Morrows' claim also fails because they constructed improvements on the northern portion of the property which prevented them from using that side to gain access to the rear of their store. The necessity must exist at the time of severance, and a grantee cannot "so change the uses of land as to convert a way of

convenience into a way of necessity." *Clemson Univ. v. First Provident Corp.*, 260 S.C. 640, 652, 197 S.E.2d 914, 920 (1973).

In their argument as to the erroneous application of the prescriptive easement rule in *Blume v. Southern Ry. Co.*, 85 S.C. 440, 67 S.E. 546 (1910), the Morrows cite *Eldridge v. City of Greenwood*, 300 S.C. 369, 388 S.E.2d 247 (Ct.App.1989), for the proposition that if a railroad ceases to use its right-of-way for railroad purposes and intends to abandon the right-of-way, the property reverts back to its original grantor. Inasmuch as this argument attempts to either attack the validity of the sale to Constructors or claim a reversionary interest in the CSX tract, it is not preserved for our review.[2] *See, e.g. McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 468 S.E.2d 633 (1996) (issue must have been raised to the trial court to be preserved for appellate review). To the extent that this argument addresses whether the special referee's application of the *Blume* rule was inappropriate, we do not address it, as the *Blume* rule is not necessary to our decision.

■ The Morrows also contend the special referee erred in not granting them an "easement in equity." They argue that since this case involves "extreme hardship" on the Morrows, the court "should use its equitable powers to fashion an appropriate remedy." They cite *Ex parte Bowers*, 320 S.C. 360, 465 S.E.2d 354 (1995). Although the stipulation states that the Morrows claim an interest in the CSX tract due to their "reliance that the property would always be owned by the railroad and therefore available for their use," the record does not reflect that the trial court ever ruled on this argument. Thus, the issue is not preserved for appellate review. *See, e.g. Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (where the trial court does not explicitly rule on a question and the appellant fails to make a Rule 59(e), SCRCP motion to amend or alter the judgment on that ground, the issue is not

---

2. The Morrows stipulated that Constructors is the owner of the CSX tract, and, during argument before the trial court, stated that ACLR–SC's charter was not an "easement type reversionary type" charter. They made no argument to the trial judge that they were entitled to some sort of reversion upon cessation of use of the CSX tract for a railroad, and did not list such an argument in the stipulation as to the various grounds they were raising.

properly before the court of appeals and should not be addressed).

## IV.  EASEMENT BY GRANT

■ The Morrows also argue that the special referee erred in refusing to consider language in the 1836 charter of the Atlantic Coast Line Railroad Company of Virginia (ACLR–VA).  The referee ruled that the ACLR–VA charter did not apply because ACLR–SC bought the CSX tract from Hartzog two years before ACLR–SC merged with ACLR–VA. We hold that even if the ACLR–VA charter is applicable, its language does not create the easement sought by the Morrows.

Our General Assembly created ACLR–SC in 1897.  In 1900, ACLR–SC merged with other railroads, with ACLR–VA being the surviving company.  ACLR–VA's 1836 charter was then filed with the Clerk of Court for Barnwell County.  This charter provides:

> . . . where it shall be necessary to pass through the land of any individual it shall also be [the railroad's] duty to provide for such individual proper ways across said railroad from one part of his land to the other. . . .

The ACLR–SC charter contains no such language.

Even if the ACLR–VA charter is applicable and creates an easement, we agree with Dyches and Constructors that the language does not further the Morrows' case.  The clear meaning of the language is that the railroad has to provide a property owner whose parcel is bisected access from his property on one side of the track to his property on the other side of the track.  It is axiomatic that the language of an express easement strictly controls the permitted uses and purposes.  25 Am.Jur.2d *Easements and Licenses* § 82 (1996). Since the Morrows do not seek to access property which belongs to them on the other side of the CSX tract, their claim of an express easement by grant fails.

## V.  CONCLUSION

We hold that the Morrows failed to establish an easement over the CSX tract by either prescription, necessity, or grant.

532

Accordingly, the order of the special referee is **AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.