584 S.E.2d 386

Richard Eugene **HARTLEY**, Betty Ann Hartley Hilton, L.C. Rabon, Larry T. Savage, William J. Hartley, Jr., Jacquelyne T. Parham, James D. Parham, Jean A. Thomas, and Jennie Mae Lemacks, **Respondents,**

v.

**JOHN WESLEY UNITED METHODIST CHURCH OF JOHNS ISLAND, Appellant.**

No. 3642.

Court of Appeals of South Carolina.

Heard April 9, 2003.
Decided May 27, 2003.
Rehearing Denied Aug. 22, 2003.

---

---

W. Andrew Gowder, Jr., of Charleston, for Appellant.

Joseph W. Ginn, III, of Charleston, for Respondents.

ANDERSON, J.:

John Wesley United Methodist Church of Johns Island appeals the order of the master-in-equity granting a prescriptive easement across church property to the residents of Evans Road. We affirm.

## FACTS/ PROCEDURAL BACKGROUND

The Appellant, John Wesley United Methodist Church of Johns Island (church), is an old parish church located adjacent to the west side of River Road on Johns Island, South Carolina. In 1874, the church acquired a one-acre parcel surrounding the sanctuary from Isaac P. Grimball. In 1943, Grimball's widow sold forty-two acres juxtaposed to the east side of River Road directly across from the church to Hawthorne Flying Service (currently Johns Island Airport), and in the same transaction, Hawthorne acquired a triangular 6.8–acre parcel that bounded the church on three sides. In 1980, Hawthorne sold the 6.8–acre parcel to the church.

The Respondents (residents) are title owners of various parcels of property also located west of River Road on Johns Island. All of their properties border Evans Road, a long established road, which bounds the remaining fourth side of the church property. The residents gain sole access to their respective homes and properties from River Road by way of a section of Evans Road, which runs across the 6.8–acre parcel belonging to the church. It is this part of Evans Road that is in controversy.

Some of the residents and their predecessors in title have continuously used Evans Road for roughly sixty years. In fact, Evans Road was named after a predecessor in title and family member of one or more of the current residents. The entire length of the road, including the segment crossing church lands, has been maintained by Charleston County for around twenty-five years.

Approximately two and a half years before the trial, the church planned to construct another building on its property in a location that would cut off the residents' access to Evans Road. Shortly before the residents brought this action, the church, without communicating with any resident, attempted to create another route from the residents' properties to River Road. The alternate route consists of a scraped dirt path that leads from the existing Evans Road where it first joins the residents' properties, continues southward across the church property, and then merges with an existing driveway that ultimately joins River Road. This "new" access is about 142 feet south of where the existing Evans Road meets River

Road. Upon discovering the church's activities, the residents immediately communicated in writing to the church that they objected to any attempts to block their existing access, inquired as to the church's intentions, and asserted their right to continued use of Evans Road. The church did not reply.

Consequently, the residents brought an action in the circuit court seeking a temporary restraining order enjoining the church from closing off access to Evans Road and a declaratory judgment granting a prescriptive easement over Evans Road. The parties stipulated to a temporary injunction until the matter could be adjudicated with finality by the master-in-equity for Charleston County. The master granted the residents a prescriptive easement under claim of right over Evans Road.

## ISSUE

Did the master err in granting a prescriptive easement based upon the residents' use under claim of right?

## STANDARD OF REVIEW

The determination of the existence of an easement is an action at law. *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998); *Eldridge v. City of Greenwood*, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App.1998). Establishing the existence of an easement is a question of fact in a law action. *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987); *Morrow v. Dyches*, 328 S.C. 522, 526, 492 S.E.2d 420, 423 (Ct.App.1997); *Revis v. Barrett*, 321 S.C. 206, 208, 467 S.E.2d 460, 462 (Ct.App.1996). The present matter was consensually referred to the master-in-equity for entry of final judgment. Accordingly, our scope of review is limited to correction of errors of law, and we will not disturb the master's factual findings that have some evidentiary support. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

The church contends the master erred in concluding the residents established a prescriptive easement because the

evidence does not support a factual finding that the residents' use was under claim of right. We disagree.

In *Morrow v. Dyches,* 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct.App.1997), this court affirmed the standard for proving a prescriptive easement, relying upon previous standards set out in *Horry County v. Laychur,* 315 S.C. 264, 434 S.E.2d 259 (1993) and *Revis v. Barrett,* 321 S.C. 206, 467 S.E.2d 460 (Ct.App.1996). There is a distinction between these two cases regarding the first of the three components required to meet the standard.

*Revis* recited the entire standard, including the first factor, exactly as it appears in *Morrow.* "To establish a private right of way by prescription, one must show (1) continued use for 20 years;...." *Revis,* 321 S.C. at 209, 467 S.E.2d at 462. *Revis* cites both *Laychur* and *Babb v. Harrison,* 220 S.C. 20, 66 S.E.2d 457 (1951) in support of the language used in its version of the standard. However in both *Laychur* and *Babb,* the first element of the standard consists of not only continued but also "uninterrupted" use for twenty years. "The following prerequisites must be met to establish a right by prescription: (1) There must be continued **and uninterrupted use or enjoyment of the right for a period of 20 years.**" *Laychur,* 315 S.C. at 367, 434 S.E.2d at 261 (emphasis added). "[T]he requirements necessary to establishing a right by prescription are: (1) the continued **and uninterrupted use or enjoyment of the right for the full period of twenty years**...." *Babb v. Harrison,* 220 S.C. 20, 24–25, 66 S.E.2d 457, 458 (1951) (emphasis added). The remaining two elements in both *Laychur* and *Babb* are consistent with those found in the standard set out in *Morrow.*

■ *Babb* and a long litany of South Carolina cases dating back to *Lawton v. Rivers,* 13 S.C.L. (2 McCord) 445, 449 (1823) call for both continuous and uninterrupted use to satisfy a grant of a prescriptive easement. *Sanitary & Aseptic Package Co. v. Shealy,* 205 S.C. 198, 203, 31 S.E.2d 253, 255 (1944); *Poole v. Edwards,* 197 S.C. 280, 283, 15 S.E.2d 349, 350 (1941); *Williamson v. Abbott,* 107 S.C. 397, 400, 93 S.E. 15, 15–16 (1917). It remains unclear why *Revis* and later *Morrow* deleted the "uninterrupted use or enjoyment" language from part one of the standard. In the instant case, we

use the standard set out in *Babb* as the most current, correct, and complete version of the essentials necessary to prove an easement by prescription.

It has long been recognized that the requisites necessary to establish a right by prescription are: (1) the continued and uninterrupted use or enjoyment of the right for the full period of twenty years, (2) the identity of the thing enjoyed, and (3) the use or enjoyment was adverse or under claim of right. *Babb*, 220 S.C. at 24–25, 66 S.E.2d at 458; *Sanitary & Aseptic Package Co.*, 205 S.C. at 203, 31 S.E.2d at 255; *Poole*, 197 S.C. at 283, 15 S.E.2d at 349; *Williamson*, 107 S.C. at 400, 93 S.E. at 15–16; *Lawton*, 13 S.C.L. (2 McCord) at 449.

It is uncontested that the residents and/or their predecessors in title have enjoyed continued and uninterrupted use of the clearly marked and well-known Evans Road in excess of twenty years. Thus, we devote our analysis to the remaining third factor of the prescriptive easement standard.

The church challenges the master's findings, arguing the residents' belief that they have a right to use Evans Road "is based solely on the fact that they are accustomed to using it and prefer it." The church further suggests that all of the residents' testimonies regarding their claim of right may be summarized into the single declaration that "the [residents] had always used [Evans Road]" and this claim of perpetual use is also "the sole basis of [the residents'] claim of right." Finally, the church interprets our court's holdings in *Revis* and *Morrow* to support its position that the residents have not met the burden of proving a prescriptive easement under claim of right. The church cites *Revis* and *Morrow* for the proposition that a party cannot assert a claim of right solely on the ground that it thought it had the right.

In support of the theory that the residents' claim of right is based on perpetual and preferred use alone, the church presented testimony that neither it nor Hawthorne Flying Service ever told the residents that their use was by right or would be permanent.

However, at least one of the residents stated that when he purchased his property on Evans Road, both the seller and the next-door neighbor to the property told him that Evans Road could not ever be legally closed off "[a]nd [access to

Evans Road] was part of the consideration for [his] purchase of the property." A long-time parishioner and lay leader of the church, who claimed active attendance since childhood, attested that at the time the church bought the property in which the disputed portion of the road runs, the church was aware that Evans Road was on the property and had been in use for forty years. Moreover, the witness admitted the church had built the rectory on a site across the road from the church to avoid blocking Evans Road in 1986. Regardless of whether or not the church verbally assured the residents of a permanent right to use the road, its selection of a building site for the rectory in 1986 indicated its willingness to preserve access to Evans Road.

Curiously, the church also presents the residents' testimonies that they did not believe they **owned** the path and had no intention of **owning** it to the exclusion of the church as proof the claim of right rested on their use alone.

The residents do not argue that any one of them individually or collectively holds actual title to the road, nor do the residents bring an action to settle title in themselves. The law granting a prescriptive easement under claim of right does not mandate a party to believe that he holds actual title or that he intends to acquire it. Rather, our courts have held in order for a party to earn a prescriptive easement under claim of right he must demonstrate a substantial belief that he had the right to **use** the parcel or road based upon the totality of circumstances surrounding his use. *See Revis v. Barrett,* 321 S.C. 206, 209, 467 S.E.2d 460, 462 (Ct.App.1996) (holding a party's belief about her right to use a road flowed from a claim of right where she knew use of the road had originated with her parents, the road was formerly a state road, she knew and participated in a lawsuit against a party seeking to deny her use, and she had used the road for a substantial period of time); *see also Morrow v. Dyches,* 328 S.C. 522, 528, 492 S.E.2d 420, 424 (Ct.App.1997) (noting a party's belief that he had a right-of-way may be sufficient for a prescriptive easement pursuant to a claim of right).

The church maintains that the residents have "attempt[ed] to cobble together a 'claim of right,' " while conceding in its brief that "they used the road for a long time, that their

parents or other relatives had used the road, that the County had occasionally scraped [Evans Road]." The church does not address these arguments directly. Instead the church dismisses them by insisting that a claim of right, by definition, requires the claiming party have "some legal right to use the road" and "[Evans Road] is simply the residents' preferred way to get to River Road." The church does not give these attendant facts sufficient importance and misinterprets their significance in supporting a claim of right.

Many of the residents testified they have used Evans Road since childhood and claimed their right flowed from their own continuous use of the road and use by prior generations of their families. Resident Jacquelyn T. Parham declared that she has used Evans Road as the sole access to her family home since she was a little girl. Indeed, Evans Road was named for Parham's grandparents. Parham opined that she felt the residents had the right to use the road "because [her] grandparents used it. [Evans Road] was there when they purchased the property [and] it's just handed down, a community road." Resident Richard Hartley professed that he had lived on Evans Road and used Evans Road as sole access his whole life of 56.5 years to reach his family home, which was acquired by his parents prior to 1945. Resident William J. Hartley, Jr. declared that he was sixty years old and had lived on Evans Road and used Evans Road as sole access to his family home all his life. Hartley was given his property by his father. Resident Jennie Mae Lemacks established that she was seventy-three years old, lived on Evans Road since she was 13.5 years old (almost sixty years), and had used Evans Road as the sole access to her property the entire time. Lemacks alleged that her home had been family property since 1942. It is clear from the record that the residents and/or their predecessors in title carried on a tradition of use for several decades. Further, testimony shows the residents relied upon the use by their predecessors in title to gird their belief that they held a claim of right to use Evans Road.

It is acknowledged that Charleston County has maintained Evans Road for many years. Resident Parham avowed that the county has brought in dirt and rocks to refurbish the roadbed and routinely scraped Evans Road at least once a month for about twenty years. Resident Richard Hartley also

said that the county maintained Evans Road with truckloads of dirt and grading equipment about once a month for over twenty-five years. Resident William Hartley testified that the county had maintained the road for twenty years or more. The church never objected to the county's care and upkeep of the road. Our supreme court has held that such an extended duration of public maintenance fortifies the public character of a road and supports a finding that those who use the road may acquire an easement. *See Darlington County v. Perkins,* 269 S.C. 572, 575, 239 S.E.2d 69, 70–71 (1977) ("We are of the view, however, that the continuous and widespread public usage of the road for at least 50 years, without charge or interference from previous owners and these Landowners, clearly establishes the public character of the road. This conclusion is fortified by the extent and duration of the maintenance which the county has performed on the road.").

The master relied upon this court's decision in *Revis v. Barrett,* 321 S.C. 206, 467 S.E.2d 460 (Ct.App.1996). In *Revis,* similar to the facts in this case, the party seeking an easement had been using the road at issue to access her property and she was aware that her parents had used this roadway to access this property. In *Revis,* this court affirmed the trial court's grant of a prescriptive easement under claim of right holding:

Clearly, Revis was under the impression that she had a continuing right to use the road, originating with her parents' use of the roadway. There was certainly ample evidence to support the master's finding Revis' belief about her right to use the road flowed from a "claim of right,". . . .

*Id.* at 210, 467 S.E.2d at 462.

In this case the residents, their families, and/or their predecessors in title had used Evans Road for approximately sixty years because they thought they had the right to use it. The Charleston County government has extensively maintained the road for a period in excess of twenty years. The residents immediately reasserted their claim of right on the first occasion that the church attempted to interfere with their use.

There was ample evidence from which the master could have concluded that the residents earned a prescriptive easement under claim of right over Evans Road.

## CONCLUSION

For the forgoing reasons, the order of the master granting a prescriptive easement under claim of right is

**AFFIRMED.**[1]

CONNOR and HUFF, JJ., concur.

---

1. Because we affirm the trial court, it is not necessary to address the residents' adverse possession claim.