THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Brenda Jones Appellant,
v.
Lake Daley Respondent.
 
 
 

Appeal From Jasper County
C. Stephen Bennett, Special Referee

Unpublished Opinion No. 2006-UP-376
Submitted November 1, 2006  Filed November 17, 2006

AFFIRMED

 
 
 
David S. Mathews, of Ridgeland, for Appellant.
R. Thayer Rivers, of Ridgeland, for Respondent.
 
 
 

PER CURIAM:  Brenda Jones appeals the special referees order finding that her use (along with that of her predecessors in ownership) of Lake Daleys property for ingress and egress to her adjoining property did not create an easement by prescription.  The special referee found Jones failed to prove twenty years of continuous usage of the alleged easement.  We affirm.[1]
FACTS
This case comes to us on appeal for a second time, having previously been reversed by the court of appeals and remanded to the special referee for a determination as to whether the use of the alleged easement by Jones and her predecessors was continuous for a twenty year period.  While new testimony, evidence, and arguments were presented at the second hearing, on remand, the transcript and exhibits of the first hearing were also available for consideration by the special referee.
The alleged dominant property (the Jones Parcel) is a five acre tract of land in Jasper County acquired by Brenda Jones great uncle, Thomas Washington, in 1939.  In 1963, Thomas gave this parcel to his daughter, Jones aunt Jannie Washington.  Ms. Washington granted the property to Jones, transferring a one-half interest in 1982 and the remaining half in 1993.
The alleged servient land (the Daley Parcel) is a two hundred acre tract, located, in part, on the western boundary of Jones property.  At the time of Thomas Washingtons acquisition of the Jones Parcel, the Daley Parcel was owned by Union Camp.  In 1987, the land was sold to Delta Plantation and was subsequently purchased by Lake Daley in the late 1990s. 
Throughout the Washington/Jones familys ownership of the Jones Parcel, the property has been landlocked.  However, the land was accessed by means of other surrounding properties.  When, where, how, and to what frequency this land was accessed is central to this dispute.  
One possible means of access to the property was by use of a trail that followed the northern and eastern boundary of the Daley Parcel and the nearest public road, located to the west of both properties.  This path, which follows the outer borders of the Daley Parcel but is situated entirely within its boundaries, is the alleged prescriptive easement and the route that Jones asserts was used continuously for a period of twenty years.  According to the testimony of Jones and her witnesses, this path existed since the time of Thomas Washingtons acquisition of the five acre property in 1939.  It is also their testimony that the family began using the path at that time.  
At some point in the early 1950s, Union Camp began periodically plowing the preexisting access trail for the purpose of creating a firebreak or fire lane.  Jones and her witnesses contend that following Union Camps tilling, the Washingtons would work the freshly plowed path with shovels, leveling out the newly cleared trail to make the path more suitable for ingress and egress to their property.  The Washingtons never requested permission to use the trail because they believed, since the trail was the only access to their property, they had a valid legal right to maintain and use it in order to reach their land.  Union Camp, the owner of the Daley Parcel for most of the time period at issue, was aware of the Washingtons use and maintenance of the trail and fully condoned it during the time in which it was used.    
At the initial hearing, Jones uncle, Peter Washington, who worked the Jones Parcel with his father, original owner Thomas Washington, testified the family actively farmed Jones parcel from at least the late 1950s.  During their testimony, Jones other two uncles made no attempt to dispute this information.  In contrast to his earlier statement, during the second hearing, Peter Washington testified that his father farmed the land until the early 1980s. 
Regardless of the date, after the Washingtons ceased farming the Jones Parcel, their use of the trail became less frequent in the decades that followed.  They testified, however, that they continued to periodically visit the property and maintain the trail following Union Camps plowing.  Jones, age 46, testified the trail was used by her family to access the parcel as far back as [she] remembered, and she specifically recalled using the access herself since the 1970s or 1980s.  However, because Jones did not reside in Jasper County, or even South Carolina, during her youth, her visits to the property, though numerous, were sporadic.  Johnny Scott, a nearby resident since the 1960s, testified that the trails use to reach buried property was common community knowledge.
In the mid-1990s, Delta Plantation, then current owner of the Daley Parcel, decided to close a road used by several other buried landowners to cross over the two hundred acre property.  This road did not connect to the Jones Parcel.  To satisfy landowners who possessed recorded easements over the closed road, the northern access trail, the path used by the Washington family, was expanded into a full-sized road and all landowners with recorded easements over the closed road were granted written easements over the newly created one.  This road did not connect to the Jones Parcel.  Because Jones did not have a recorded easement to use the closed road, she was not granted a written easement to use the road built over her parcels only access.  
C.M. Dansler, an employee for Delta Plantation, who worked on the 1990s trail expansion, testified as to the state of the trail when they decided to build the new road.  He stated he had maintained and expanded the firebreak since the beginning of his employment in 1987.  Nevertheless, when asked if the new road was built over an existing road, he stated, No . . . there was a fireline, but just barely.  Although he opined that the path was about eight feet wide in places and would be traversable by a small tractor, he testified that by the mid-90s the trail was nothing more than a deer trail. 
In 2001, Jones attempted to haul timber from her parcel over the newly expanded road.  Daley objected to this activity.  In 2002, Jones brought an action against Daley to declare an easement by prescription for ingress and egress over the road.  The appointed special referee found no easement by prescription was created by Jones and her predecessors prior use.  
STANDARD OF REVIEW
The determination of the existence of an easement is a question of fact in an action at law.  Slear v. Hanna, 329 S.C. 407, 496 S.E.2d 633, (1998); Jowers v.  Hornsby, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987); Hartley v. John Wesley United Methodist Church of Johns Island, 355 S.C. 145, 148, 584 S.E.2d 386, 387 (Ct. App. 2003).  In an action at law tried without a jury, the judges finding of fact will not be disturbed on appeal unless there is no evidence to support the judges findings.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 85-86, 221 S.E.2d 733, 775 (1976); Goodwin v. Johnson, 357 S.C. 49, 52-53, 591 S.E.2d 34, 36 (Ct. App. 2004); Roberts v. Gaskins, 327 S.C. 478, 486 S.E.2d 771, (Ct. App. 1997).   The present matter was consensually referred to a special referee.  Accordingly, our scope of review is limited to the correction of errors of law, and we will not disturb the referees factual findings that have some evidentiary support.  Townes, 266 S.C. at 85-86, 221 S.E.2d at 775; Hartley, 355 S.C. at 148, 584 S.E.2d at 387. 
DISCUSSION
On appeal, Jones argues the special referee erred in finding she failed to prove her usage (and/or that of her predecessors in title) of the Daley parcel was continuous for the required period.  Specifically, Jones contends the only reasonable inference to be drawn from the evidence presented was that Thomas Washington and his children and grandchild used the route at issue on Daleys land as the only means of ingress and egress to their property and that this use was continuous and without interruption for at least twenty years.  We disagree.
Although it is Jones contention that the purported easement was in use since at least 1939, the special referee found differently, ruling that at the very earliest, any use of the purported easement did not begin until 1949.  There is evidence in the record to support the referees finding.  
Jones and her witnesses specifically and repeatedly referenced a twenty-one acre plot of land they called the home place, which bordered on the northern boundary of Daleys property.  This home place was to the north of and directly adjacent to a large section of the alleged easement that Jones claims was used to access the Jones Parcel since 1939.  However, the Washington/Jones family did not acquire the land referred to as the home place until 1949.  An earlier, completely different home place for the Washington/Jones family once sat directly to the east of the Daley parcel and to the south of, although not adjacent to, the Jones Parcel.  This earlier home place was lost due to tax forfeiture sometime prior to the 1949 acquisition of the current home place.
Peter Washington testified that during his familys ownership of the first home place, he and other relatives were able to and did access the Jones Parcel by way of a different fire lane.  This path ran directly north from the original home place until it reached the five acre Jones Parcel.  This being a different route from the one which Jones claims was used to ingress and egress the Jones Parcel from 1939 onward, there was evidence in the record to support a finding by the special referee that any use of the purported easement did not begin until, at the earliest, the Washingtons/Jones acquisition of the current home place in 1949.  
Although Jones argues that the evidence only allows for a conclusion that the purported easement was in use until 1980, there is evidence in the record to support the referees finding that continuous use of the path ceased much earlier.  
When asked at the first hearing, So when did yall quit farming the five acres, Peter Washington responded Late fifties 59.  In the second hearing, Mr. Washington testified that his father farmed the land until around 1980.  Although he explained this inconsistency with his previous statement as a misunderstanding as to what was meant by the word yall, Mr. Washingtons testimony provided evidence on which the special referee could find that the family ceased farming operations on the Jones Parcel in 1959, particularly in light of the fact that the referee found this inconsistency to have impeached Mr. Washington.
The special referee found there was no clear, direct and credible testimony by [Jones] and her witnesses as to dates, months, years, times or frequency of [Jones] visitation and her predecessors visitation to her 5 acre parcel of property by usage of the fire lane during the periods of time in the 1960s, 1970s, 1980s, and 1990s  There was evidence to support this finding.  After the point in time when her family quit farming the land, Jones presented very little evidence as to use of the path over Daley Parcel.  Additionally, what evidence there was, suggested only sporadic visits to the land.  The burden of proving a easement by prescription is on the party relying thereon.  Morrow v. Dyches, 328 S.C. 522, 492 S.E.2d 420 (Ct. App. 1997); see also Matthews v. Dennis, 365 S.C. 245, 251, 616 S.E.2d 437, 440-41 (Ct. App. 2005) (stating the plaintiffs had the burden of proof in establishing their right to a prescriptive easement).  Thus, the special referee could reasonably have found that Jones did to meet her burden of proving her and her familys use of the purported easement was continuous after 1959.
CONCLUSION 
There was evidence on which the special referee could base his finding that Jones predecessors use of the purported easement did not begin until 1949 and ended, much less than twenty years later, in 1959.  Furthermore, the evidence also justified a finding that any use of the route that took place after 1959 was not sufficiently proven to be continuous and uninterrupted for the requisite time period.  There was ample evidence to support the special referees finding that a prescriptive easement was not established.  Accordingly, and the special referees order is
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.