616 S.E.2d 437

**Ruby E. MATTHEWS, Bobby J. Matthews
and David McCoy, Respondents,**

v.

**Gloria DENNIS and Alton Dennis, Appellants.**

**No. 4010.**

Court of Appeals of South Carolina.

Submitted May 1, 2005.

Decided July 5, 2005.

Gordon B. Jenkinson, of Kingstree, for Appellants.

S. Porter Stewart, II, of Florence, for Respondents.

PER CURIAM:

Gloria and Alton Dennis ("Defendants") appeal the special referee's determination that their property was subject to an easement in favor of adjoining property owned by Ruby E.

Matthews, Bobby J. Matthews, and David McCoy (collectively referred to as "Plaintiffs"). Specifically, the special referee found Plaintiffs established their right to an easement under the theories of prescription and necessity. We affirm.[1]

## FACTS

Gloria Dennis and Ruby Matthews are first cousins. In 1946, Otis McKnight, who was Gloria's father and Ruby's uncle, built a home place on a tract of land that he owned in Florence County, South Carolina. This property, consisting of about twenty-one and one-half acres of farmland, was adjacent to a tract of land owned by Otis's brother.

In 1951, Otis received from his brother a thirty-foot-wide strip of land, running approximately one-quarter of a mile between their respective properties. According to the deed of conveyance, the property, commonly known as "Hawk Lane," was "to be used as a roadbed leading from Anderson Bridge road to [the] home of Otis McKnight." The deed also noted that G.M. Evans, Ruby's father, helped to stake out the property and that Bobby Matthews, Sr., Ruby's now deceased husband, was present when this took place. Other than Hawk Lane, there is no documented legal access to Otis's property, and the location of the roadway has not changed since the time that Otis acquired it.

In 1963, Otis conveyed a one-acre portion of his land to Defendants, who have lived on this property since 1964. In 1969, Otis transferred his remaining property to Bobby Matthews, Sr., while reserving a life estate for himself and his wife in the one acre of land where their home was located. Upon Otis's death in 1976, his remaining property transferred to his widow and children. By deed dated April 23, 1986, Otis's heirs transferred their interest in Hawk Lane to Defendants.

In 1970, Bobby Matthews, Sr., transferred a portion of the property that he received from McKnight to other individuals. Two roads, Vansel and Farmer Roads, border the property. The testimony differed in regards to whether the roads were in existence at the time of the 1970 transfer. In 1984, Bobby

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

Matthews, Sr., transferred the remainder of his property to Ruby. In 1998, Ruby transferred a one-acre parcel to her nephew, David McCoy. In 2002, she transferred her remaining property to her son, Bobby J. Matthews, while reserving a life estate for herself.

Plaintiffs' property is presently bounded by land owned by the McAllister family. A roadbed known as McAllister Lane traverses the McAllister property and is within a quarter-mile from Ruby's home.

The Matthews have rented the McAllister property for farming. With permission from the McAllisters, they have periodically used McAllister Lane for access to and from their property; however, Hawk Lane has always been the main access route.

A dispute over the use of Hawk Lane resulted in an attempt by Defendants to block Plaintiffs' access to the road in July 2000. This prompted Plaintiffs to bring the instant action to have an easement declared over Hawk Lane for access to their property. In their complaint, they alleged they had an easement by prescription, necessity, or dedication. Defendants denied Plaintiffs' right to an easement and sought an injunction prohibiting their use of Hawk Lane.

The case was transferred to a special referee, who found (1) Plaintiffs had both a prescriptive easement and an easement by necessity to use Hawk Lane to access their property, but (2) Plaintiffs failed to prove Hawk Lane had been dedicated to public use. Following the denial of their motion for reconsideration, Defendants appealed.[2]

---

**2.** We address only those arguments challenging the special referee's findings of fact and conclusions of law regarding an easement by prescription. Because we affirm the determination that Plaintiffs had established their right to an easement under this theory, we make no ruling on their entitlement to an easement by necessity. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal); *Dwyer v. Tom Jenkins Realty*, 289 S.C. 118, 120, 344 S.E.2d 886, 888 (Ct.App.1986) ("[w]here a decision is based on two grounds, either of which, independent of the other, is sufficient to support it, it will not be reversed on appeal because one of those grounds is erroneous") (quoting 5 Am.Jur.2d *Appeal and Error* 727, at 171 (1962)).

## LAW/ANALYSIS

■ 1. Citing the Maine case of *Rollins v. Blackden,*[3] Defendants first assert the 1986 conveyance of Hawk Lane to them by the heirs of Otis McKnight "interrupted" the use of the property and, therefore, the time for calculating the twenty years necessary for a prescriptive easement should have started in 1986. They also contend the twenty-year prescriptive period could not begin to run against them until they acquired title to the property in 1986 because they could not have sued to enjoin the use of a road that they did not own. To the extent these arguments have been preserved for appeal, we find they are without merit.[4]

■ Creation of a prescriptive easement requires the following: "(1) There must be [a] continued and uninterrupted use or enjoyment of the right for a period of 20 years. (2) The identity of the thing enjoyed must be proven. (3) The use must have been adverse or under a claim of right."[5] "Periods of prescriptive use may be tacked together to make up the prescriptive period if there is a transfer between the prescriptive users of either the inchoate servitude or the estate benefited by the inchoate servitude."[6]

In the present case, Plaintiffs have used Hawk Lane continuously, openly, and without interruption since at least 1969 for ingress and egress to their property. As late as 1998, the Florence Municipal/County Planning Department approved a plat that was prepared for David McCoy for the installation of a well and septic system on the Matthews property and depicted Hawk Lane as the only access to the property. Hawk Lane has been identified by Florence County with a standard blue road sign, and, as testified by Alton Dennis, is

---

3. 112 Me. 459, 92 A. 521 (1914).

4. Although the special referee ruled the use was uninterrupted since at least 1969, he never specifically addressed either the issue of whether the 1986 conveyance to Defendants disrupted Plaintiffs' use of the road or whether the prescriptive period should have been calculated from the time Defendants acquired Hawk Lane.

5. *Horry County v. Laychur,* 315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993).

6. *Restatement (Third) of Property: Servitudes* § 2.17 (2000).

part of the emergency 9–1–1 system. It also appears the twenty-year prescriptive period ran long before Defendants' initial attempt to barricade Hawk Lane, which, according to Ruby, was about eight years before the final hearing in this case.[7] Under these circumstances, we hold the evidence in the record supports the special referee's finding that Plaintiffs successfully established uninterrupted use of Hawk Lane for at least twenty years.[8] The fact that Hawk Lane was conveyed to Defendants during the prescriptive period did not interrupt Plaintiffs' use of the roadway.[9]

■ 2. We disagree with Defendants' argument that Plaintiffs' claim of right was insufficient because it was based on a mistaken belief of ownership.

■ A party claiming a prescriptive easement under a claim of right must "demonstrate a substantial belief that he had the right to *use* the parcel or road based upon the totality of circumstances surrounding his use." [10]

We hold the record supports the special referee's finding that "Plaintiffs have established that theirs has always been a belief that they have had a right to use of the subject roadway for ingress and egress, and had openly done so for well in excess of twenty years." Ruby testified that members of her family had always used Hawk Lane for access while acknowledging they may not have had legal documents granting them

---

7. The final hearing in this case was held in August 2003.

8. *See Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998) (stating the determination of the existence of an easement is a question of fact in a law action); *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987) ("The decision of the trier of fact as to whether or not an easement exists will be reviewed by the Court as an action at law.").

9. *See* James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements and Licenses in Land* § 5:21 (Thomson/West 2005) ("Transferees of land take subject to ripening prescriptive claims.").

10. *Hartley v. John Wesley United Methodist Church*, 355 S.C. 145, 151, 584 S.E.2d 386, 389 (Ct.App.2003) (emphasis in original); *see also* 25 Am.Jur.2d *Easements and Licenses*, § 57, at 552 (2004) (stating "an intent to claim adversely may be inferred from the acts and conduct of the dominant users" and defining "claim of right" as "without recognition of the rights of the owner of the servient estate").

the right to do this. Moreover, this case is distinguishable from *Babb v. Harrison*,[11] which Defendants cite in support of their position. Whereas the party asserting the easement in *Babb* based her initial claim on one of ownership of the property over which she asserted a right of use, the testimony in the present case reflects that Plaintiffs believed that they had only the right to use Hawk Lane; there is no suggestion that they ever believed they owned Hawk Lane itself.[12]

■ 3. Finally, Defendants argue Plaintiffs' use of the road should be deemed permissive because of the family relationship between the parties. We disagree.

*Lynch v. Lynch*,[13] which Defendants cite in support of their position, is distinguishable from the present case. *Lynch* concerned a claim of adverse possession and not a claim for a prescriptive easement. Moreover, that decision addresses only immediate family relationships, such as between siblings or parent and child, rather than extended kinship, such as in the present case. In any event, based on case law from both South Carolina and other jurisdictions, we see no reason to hold that the degree of affinity between the parties in this case is by itself sufficient reason to reverse the special referee's finding that Plaintiffs met their burden of proof in establishing their right to a prescriptive easement.[14]

**AFFIRMED.**

GOOLSBY, HUFF, and STILWELL, JJ., concur.

---

**11.** 220 S.C. 20, 66 S.E.2d 457 (1951).

**12.** In their brief, Defendants cite Ruby's testimony in which she admitted, "I might not have no legal document, but when the farm was sold to us, we thought we had legal documents." This statement, however, was in response to the following question: "But you have no legal documents that say you have the right to use Hawk Lane?"

**13.** 236 S.C. 612, 115 S.E.2d 301 (1960).

**14.** *See id.* at 620, 115 S.E.2d at 305 (stating that "where one seeks to acquire title by adverse possession against his brothers and sisters, such a claim should not be sustained 'except upon a clear preponderance of the evidence' ") (quoting *Whitaker v. Jeffcoat*, 128 S.C. 404, 405, 122 S.E. 495, 495–96 (1924)); *Nordin v. Kuno*, 287 N.W.2d 923, 927 (Minn.1980) (holding the fact that landowners and claimants of prescriptive easement were first cousins once removed was insufficient to

---

rebut the presumption of hostile use); *Cope v. Cope*, 158 Mont. 388, 493 P.2d 336, 338–39 (1971) (reversing the finding of a prescriptive easement and noting, in addition to the familial relationship between the owners of the estates involved, the "continuous and cordial relationship" they maintained for "a considerable period of time" and the presence of gates on the servient estate); *Martin v. Proctor*, 227 Va. 61, 313 S.E.2d 659, 662 (1984) (noting that "use by a child of land owned by its parent is regarded as permissive" absent clear notice of the childs intention to assert an adverse claim).