722 S.E.2d 813

**Thelease KELLEY, Appellant,**

v.

**Lee Dewayne SNYDER and Harry L. Snyder, Respondents.**

**No. 4929.**

Court of Appeals of South Carolina.

Heard Dec. 5, 2011.

Decided Jan. 25, 2012.

Rehearing Denied March 29, 2012.

---

**3.** The Appellate Panel specifically stated "do not contribute to his disability."

568

R. Bentz Kirby, of Orangeburg, for Appellant.

James B. Jackson, Jr., of Santee, for Respondent.

SHORT, J.

In this land dispute involving a road on Thelease Kelley's property that leads to the property of Lee Snyder and his

father Harry Snyder[1] (Respondents), Kelley appeals the master's order granting Respondents a prescriptive easement to use the road "for ingress and egress" from their property to a public road. We affirm.

## FACTS

Kelley purchased twenty-eight acres of land from his brother on November 23, 1977. The property description did not mention the property was subject to an easement.[2] Respondents purchased their property from Willie and Lois Rast on June 29, 1989, and the deed included an easement for a twenty-foot access road from U.S. Highway 178 to Respondents' property, which appears to be the road at issue in this case.[3] A new survey of Kelley's land was completed on May 25, 2005, showing Kelley's twenty-four acres, the one-acre parcel he sold, and the roadway in question.

Kelley lives in New York, but has owned the property since purchasing it in 1977, and although he acknowledged Respondents had been using the "wagon road" since purchasing their property, he claimed he never gave Respondents permission to use the road to access their property.[4] Kelley testified Respondents never asked him for permission to use the road or "cut it"; however, he never told them they were not allowed to use the road. Kelley maintains the road was barely passable by any vehicle other than a wagon until Respondents "cut" a road through after they purchased the property and put up a gate and private property sign. He claims the parties have had an "ongoing dispute" about the road for more than ten years, but the only contact he had with Respondents was comprised of two conversations about the gate they erected on the road. Kelley testified he asked Respondents to move the gate when they installed it, and they moved it back about

1. Because Harry Snyder co-owned the land, the court joined him as a defendant.

2. At some point, Kelley sold a one-acre tract of the land.

3. All parties agree there appears to be no other deeded easement to this roadway on the records in Orangeburg County.

4. The road is unpaved and runs the entire length of one side of Kelley's land, connecting Respondents' land to U.S. Highway 178.

halfway down his property. He then asked Respondents why they did not move it to their property line, and they replied they had an easement and a right to do what they wanted with his property. Lee Snyder (Lee) testified Kelley asked him to move the gate, but he said he preferred to leave the gate to prevent people from using it. He offered Kelley a key to the gate, but Kelley refused to take it.

Respondents testified Kelley never forbade them from using the road, and no one has ever prevented them from using it. Respondents also assert local residents have used the road for years to access their property and other property for hunting and farming.[5] Larry Rast, son of Willie and Lois Rast, testified he and his father widened the road to accommodate farm equipment in the mid–1960s, and his family used the road to farm their property until the 1970s. Resident Harry Wimberly testified he used the road as far back as the late 1960s to hunt, and he has used it to access Respondents' house. Curtis Spell, who grew up in the area, testified he is seventy-eight years old, and the road was there when he was born. Marion Kennedy also testified the road has been there as long as he can remember, and he is sixty-five years old. He also testified he has seen others use the road, in addition to Respondents. Before purchasing the property, Respondents rented the land from the Rasts and used the road to hunt the land.

Lee testified he is the only person who maintains the road on Kelley's property. Respondents also admitted they have exercised some control over the road by telling loggers and a farmer they "preferred them not to use it," and the loggers and farmer acquiesced.[6] Kelley testified there were other ways Respondents could have accessed their property, including an existing road. Lee testified that in addition to the road on Kelley's land, he and his father also use another road to access their property, which traverses some additional land they purchased.

---

**5.** Kelley testified he never gave any hunters permission to use his land, and he has never known any hunters to use the road.

**6.** The loggers and farmer were using Kelley's land with his permission.

Kelley filed a complaint on June 4, 2008, alleging Respondents had created a twenty-foot private roadway on his property without his permission, and he had given notice to Respondents to cease using his property for any purpose. He sought an injunction to restrain Respondents from using the property and trespassing on his land. Respondents filed an answer, asserting as a counterclaim that Respondents had purchased property from the Rasts, which included a conveyance of "[a]ll our right, title and interest in an easement or right-of-way for ingress and egress over, along and through a 20-foot access road from the property herein described to U.S. Highway No. 178." Additionally, Respondents asserted they had used the road in an open and hostile manner continuously since purchasing the property in 1989; therefore, Respondents sought a declaratory judgment that they obtained a prescriptive easement over the road. The matter was referred to a master in equity by a consent order of reference, and the master granted Respondents "a prescriptive easement to use the twenty (20)-foot roadway in question ... for purposes of ingress and egress to their property."[7] Kelley filed a motion to reconsider, which the master denied. This appeal followed.

## STANDARD OF REVIEW

"The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Pittman v. Lowther*, 363 S.C. 47, 50, 610 S.E.2d 479, 480 (2005). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775(1976).

## LAW/ANALYSIS

Kelley argues the master erred in ruling Respondents had a prescriptive easement under a claim of right and pursuant to

---

7. The master also ordered Respondents to move their gate to their property; however, the parties have not appealed that portion of the order.

an adverse use for a period of twenty years.[8]

An easement is a right given to a person to use the land of another for a specific purpose. *Murrells Inlet Corp. v. Ward,* 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct.App.2008). An easement may arise in three ways: (1) by grant; (2) from necessity; and (3) by prescription. *Frierson v. Watson,* 371 S.C. 60, 67, 636 S.E.2d 872, 875 (Ct.App.2006). "A prescriptive easement is not implied by law but is established by the conduct of the dominant tenement owner." *Boyd v. BellSouth Tel. Tel. Co.,* 369 S.C. 410, 419, 633 S.E.2d 136, 141 (2006). To establish a prescriptive easement, the party asserting the right must show: (1) continued and uninterrupted use of the right for twenty years; (2) the identity of the thing enjoyed; and (3) use which is either adverse or under a claim of right. *Horry Cnty. v. Laychur,* 315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993). "To establish an easement by prescription, one need only establish either a justifiable claim of right *or* adverse and hostile use." *Jones v. Daley,* 363 S.C. 310, 316, 609 S.E.2d 597, 600 (Ct.App.2005) (emphasis added). There is no requirement of exclusivity of use to establish a prescriptive easement. *Id.* at 317, 609 S.E.2d at 600. The party claiming a prescriptive easement bears the burden of proving all of the elements. *Morrow v. Dyches,* 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct.App.1997).

---

8. It is not clear whether the master granted Respondents a prescriptive easement on grounds of adverse use, a claim of right, or both, and the parties concede the master's order is unclear. The master based the prescriptive easement on several findings of fact he made in his order. In finding of fact number four, the master found that based on Respondents' deed, "[t]he use and enjoyment of the roadway in question was both *adverse* to [Kelley] and his predecessor in title since 1989 *under a claim of right.*" (Emphasis added.) The master also found in finding of fact number four, that Respondents *"claim their right* to the roadway in question pursuant to their deed, which indicated that a twenty (20)-foot easement was granted to them by their predecessors in title." (Emphasis added.) In finding of fact number one, the master found "[t]he roadway in question has been used continuously, openly and notoriously for a period in excess of twenty (20) years" and "the use [of the roadway] by [Respondents] and others [has] been *hostile* to the ownership of [Kelley] and his predecessor in title, as evidenced by the fact that [Respondents] have maintained a gate thereon since the early 1990s." (Emphasis added.) The master never clarified if he granted Respondents a prescriptive easement on the ground of adverse use or under a claim of right, or on both.

## I. Identity

Kelley concedes the identity of the roadway, the second element necessary to establish a right by prescription. Therefore, we need not address this element.

## II. Continuous and Uninterrupted

Kelley does not specifically challenge the master's finding that Respondents' use of the road was continuous and uninterrupted, the first element necessary to establish a right by prescription. "[I]n order to satisfy the continual use requirement, the use must only be of a reasonable frequency as determined from the nature and needs of the claimant." *Jones*, 363 S.C. at 318, 609 S.E.2d at 601. "When the claimant has established that the use was open, notorious, continuous, and uninterrupted, the use will be presumed to have been adverse." *Boyd*, 369 S.C. at 419, 633 S.E.2d at 141.

Although Respondents' need for using the road has evolved over time, testimony indicates Respondents used the road with reasonable frequency for each of those needs. Lee testified he began using the road in 1978 or 1979 for hunting purposes. He did not explicitly state how often he used the road for hunting; however, the fact that he was a member of a hunting club that used the road suggests he used it with reasonable frequency to hunt. Lee further testified that after he bought the property in 1989, he kept dogs on his land and used the road to get to the dogs. In order to care for his dogs, Lee had to have used the road frequently. Finally, Lee testified that when he moved to his land in 1991 or 1992, he used the road to get to his house.

The record also supports the master's finding that Respondents' use of the road was uninterrupted during the prescriptive period. The servient owner may interrupt the prescriptive period by engaging in "overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief." *Pittman*, 363 S.C. at 52, 610 S.E.2d at 481. "In addition to physical barriers, verbal threats which convey to the dominant landowner the impression the servient landowner does not acquiesce in the use of the land, are also sufficient to interrupt the prescriptive period." *Id.* Respondents testified Kelley did

not prevent them from using the road, and Harry testified the only obstruction he has ever seen on the road is the gate they erected. Although Kelley asked Respondents to move the gate, there is no indication that Kelley's request conveyed to Respondents the impression that he did not acquiesce in Respondents using the road. In fact, after Lee moved the gate back, Kelley merely asked why Lee put it there instead of on his land. Further, Kelley never told Respondents they could not use the road. Therefore, the testimony shows Respondents' use of the road was uninterrupted during the prescriptive period.

### III. Claim of Right

A party claiming a prescriptive easement under a claim of right "must demonstrate a substantial belief that he had the right to use the parcel or road based upon the totality of the circumstances surrounding his use." *Hartley v. John Wesley United Methodist Church*, 355 S.C. 145, 151, 584 S.E.2d 386, 389 (Ct.App.2003); *see Revis v. Barrett*, 321 S.C. 206, 209, 467 S.E.2d 460, 462 (Ct.App.1996) (holding a party's belief that she had a right to use a road flowed from a claim of right that originated with her parents' use of the roadway to access the property, and her use of the road for a substantial period of time to access her property); *Morrow*, 328 S.C. at 528, 492 S.E.2d at 424 (noting a party's belief that he had a right-of-way may be sufficient for a prescriptive easement pursuant to a claim of right). "The law granting a prescriptive easement under claim of right does not mandate a party to believe that he holds actual title or that he intends to acquire it." *Hartley*, 355 S.C. at 151, 584 S.E.2d at 389.

Here, there is evidence that Respondents believed they possessed the right to use the road. Respondents' deed indicated the Rasts had a right of ingress and egress over the road and were conveying that right to Respondents. Harry Snyder testified that before purchasing the land, they checked the deed to make sure it had an easement because they would not have purchased land-locked land. As such, Respondents used the road to access their land, and improved and maintained the road. Additionally, before purchasing the property, Respondents rented the land from the Rasts and used the road to hunt the land. There was also ample evidence the

Rasts used the road under a claim of right. The language in the deed, stating the Rasts were conveying "[a]ll of our right, title and interest in an easement or right-of-way for ingress and egress over, along and through" the road, indicates the Rasts believed they had a right to use the road. Larry Rast testified he and his father widened the road in the mid–1960s to accommodate their farming equipment. Additionally, Larry testified his grandparents owned the land prior to his parents, and they also used the road to access the land.

Kelley asserts the master erred in ruling that the claim of right existed against both Kelley and his grantor for more than twenty years because there was no evidence that any claim of right existed prior to the deed to Respondents in 1989. Respondents purchased their land on June 29, 1989, and Kelley filed his complaint on June 4, 2008; therefore, Respondents' claim of right as landowners extends back just shy of nineteen years. Regardless, "[a] party may 'tack' the period of use of prior owners in order to satisfy the 20–year requirement." *Morrow*, 328 S.C. at 527, 492 S.E.2d at 423 (citing 25 Am.Jur.2d *Easements and Licenses* § 70 (1996)). "[T]he time of possession may be tacked not only by ancestors and heirs, but also between parties in privity in order to establish the 20–year period." *Getsinger v. Midlands Orthopaedic Profit Sharing Plan*, 327 S.C. 424, 430, 489 S.E.2d 223, 226 (Ct.App.1997). Tacking of periods of prescriptive use is permitted where "there is a transfer between the prescriptive users of either the inchoate servitude or the estate benefitted by the inchoate servitude." *Matthews v. Dennis*, 365 S.C. 245, 249, 616 S.E.2d 437, 439 (Ct.App.2005) (quoting Restatement (Third) of Property: Servitudes § 2.17 (2000)). If tacking is used, the use by the previous owners must have also been adverse or under a claim of right. *See Morrow*, 328 S.C. at 528, 492 S.E.2d at 424. Therefore, tacking the Rasts' claim of right over the road to Respondents' claim of right, Respondents have well over twenty years of use of the roadway.

## IV. Adverse Use

"When the claimant has established that the use was open, notorious, continuous, and uninterrupted, the use will be presumed to have been adverse." *Boyd*, 369 S.C. at 419, 633 S.E.2d at 141. Then, the burden shifts to the title

owner of the servient tenement (Kelley) to rebut the presumption that the use was adverse. *Sanitary & Aseptic Package Co. v. Shealy,* 205 S.C. 198, 203, 31 S.E.2d 253, 255 (1944). An "intent to claim adversely may be inferred from the acts and conduct" of the dominant users. *Matthews,* 365 S.C. at 250 n. 10, 616 S.E.2d at 440 n. 10 (quoting 25 Am.Jur.2d *Easements & Licenses* § 57, at 552 (2004)).

Kelley impliedly concedes Respondents' use of the road after they purchased their land in 1989 was adverse, in that they erected a gate and asked loggers and a farmer not to use the road. However, Kelley argues Respondents are not entitled to a prescriptive easement based on adverse use because "there is no competent evidence that the use was adverse" for the full twenty years. Kelley states, "there is no testimony by any of the witnesses that the use was ever adverse, except the testimony which relates to the time period which is less than twenty (20) years prior to the law suit being instituted."

Because Respondents established the use was open, notorious, continuous, and uninterrupted, and Kelley did not appeal this finding, the use is presumed to have been adverse. It is Kelley's burden to rebut the presumption. Larry Rast testified his family used the road to access their land for farming, and they widened it in the mid–1960s to accommodate their farming equipment. Additionally, Larry testified his grandparents owned the land prior to his parents, and they used the road to access the land, as well. Kelley did not present any evidence that he gave the Rasts permission to use or improve the road; therefore, Kelley has failed to rebut the presumption of adverse use. Also, as tacking is permitted to establish the 20–year period, when the Rasts' adverse use of the road is tacked to Respondents' adverse use, Respondents have well over twenty years of adverse use of the roadway.

## CONCLUSION

Because the existence of the easement is in issue, and the existence of an easement is a question of fact in a law action, we are subject to an any evidence standard of review, and we will not disturb the master's findings of fact unless there is no evidence that reasonably supports the findings. We find the evidence supports the master's finding that Respondents are

the owners of the twenty-foot right-of-way easement, by both claim of right and adverse use; therefore, we affirm the master's order.

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.