**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Raglins Creek Farms, LLC, Respondent,

v.

Nancy Dunn Martin, Appellant.

Appellate Case No. 2017-001795

---

Appeal From Richland County
Joseph M. Strickland, Master-in-Equity

---

Unpublished Opinion No. 2023-UP-062
Heard December 8, 2022 – Filed February 15, 2023

---

**REVERSED**

---

Joey Randell Floyd, Wesley Dickinson Peel, and Chelsea Jaqueline Clark, all of Bruner Powell Wall & Mullins, LLC, of Columbia, for Appellant.

John W. Wells, of Baxley, Wells & Benson, of Lugoff; and Michael Brent McDonald, of Bundy McDonald, LLC, of Summerville, both for Respondent.

---

**PER CURIAM:** This case concerns an alleged easement to use a dirt road, known as Shady Grove Road, across the lands of Nancy Dunn Martin. She appeals the master-in-equity's order finding easements by grant and prescription in favor of

Raglins Creek Farms, LLC (Respondent) and that the road was a public road. She argues that all of these findings were incorrect and that the action was barred by three different statutes of limitation.

We agree the master erred in finding easements by grant and prescription and that the road was public. We decline to address the statutes of limitation as our reasoning on the merits is dispositive.

## Standard of Review

"The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Pittman v. Lowther*, 363 S.C. 47, 50, 610 S.E.2d 479, 480 (2005). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Kelley v. Snyder*, 396 S.C. 564, 571, 722 S.E.2d 813, 817 (Ct. App. 2012) (quoting *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976), *abrogated by In re Est. of Kay*, 423 S.C. 476, 816 S.E.2d 542 (2018)).

## Prescriptive Easement

Even under our any evidence standard of review, the evidence in the record does not support the master's finding of a prescriptive easement. *See Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct. App. 2008) (stating an easement is a right given to a person to use the land of another for a specific purpose); *Frierson v. Watson*, 371 S.C. 60, 67, 636 S.E.2d 872, 875 (Ct. App. 2006) (holding an easement may arise in three ways: (1) by grant; (2) from necessity; and (3) by prescription); *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 419, 633 S.E.2d 136, 141 (2006) ("A prescriptive easement is not implied by law but is established by the conduct of the dominant tenement owner . . . ."); *Horry County v. Laychur*, 315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993) (stating that to establish a prescriptive easement, the party asserting the right must show: (1) continued and uninterrupted use of the right for twenty years; (2) the identity of the thing enjoyed; and (3) use which is either adverse or under a claim of right); *Jones v. Daley*, 363 S.C. 310, 316, 609 S.E.2d 597, 600 (Ct. App. 2005) ("To establish an easement by prescription, one need only establish either a justifiable claim of right *or* adverse and hostile use." (alteration in original)), *overruled by Simmons v. Berkeley Elec. Coop., Inc.*, 419 S.C. 223, 229-32, 797 S.E.2d 387, 390-92 (2016) ("[A]dverse use and claim of right cannot exist as separate methods of proving the third element of a prescriptive

easement as the two terms are, in effect, one and the same."); *id*. at 317, 609 S.E.2d at 600 (stating there is no requirement of exclusivity of use to establish a prescriptive easement); *Morrow v. Dyches*, 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct. App. 1997) (holding the party claiming a prescriptive easement bears the burden of proving all of the elements).

First, no one disputes that Martin's property consists of unenclosed woodland. This means that all use of the road before a gate was installed across the road in 1970 is presumed by law to be permissive use. *See State v. Miller* (*Miller II*), 130 S.C. 152, 156, 125 S.E. 298, 299 (1924) ("[T]he rule requiring that in addition to proof of the continuous use of a road for 20 years or more in order to establish a prescriptive right, 'when it passes over unenclosed woodland it must also be shown that the user was adverse,' proceeds upon the theory, soundly grounded in conditions which are a matter of common knowledge in this country, that the user of a road through unenclosed woodland is, in effect, a user by license or permission of the owner of the land." (quoting *State v. Miller* (*Miller I*), 125 S.C. 289, 291, 118 S.E. 624, 625 (1923))). The evidence did not rebut this presumption. Generic testimony—as was offered here—of the road's longstanding use for recreation, hunting, and general access without seeking the owner's explicit permission is not evidence of adverse use. As precedent aptly explains, people who travel such a road "commit no trespass (at least not until after notice to desist), and subject[] the owner to no loss or inconvenience. To prohibit them would be considered churlish, and would be ineffectual, unless a constant watch was kept to prevent them." *Miller II*, 130 S.C. at 155-56, 125 S.E. at 299 (quoting *Hutto v. Tindall*, 40 S.C.L. (6 Rich.) 396, 401 (1853)).

Second, Respondent failed to show that its use or its predecessors' use was adverse after the gate was installed in 1970. Several locks were on the gate. Testimony established that Martin and her predecessors allowed these locks by permission and would periodically remove unauthorized locks. Respondent was denied access to the road in 2009. After that, Respondent began cutting the chain and adding its own lock. While this conduct would plainly notify an owner like Martin that Respondent claimed a right to use the road, no testimony was presented that the previous use of a lock by Respondent or its predecessors provided similar notice. Indeed, the testimony established that Respondent sought and was denied permission to use someone else's lock. This undercuts rather than supports the claim of longstanding adverse use.

**Easement by Grant**

The master erred in finding an easement by grant. *See Murrells Inlet Corp.*, 378 S.C. at 232, 662 S.E.2d at 455 (holding an easement is a right given to a person to use the land of another for a specific purpose); *Frierson*, 371 S.C. at 67, 636 S.E.2d at 875 (holding an easement may arise in three ways: (1) by grant; (2) from necessity; and (3) by prescription).

Several parcels of land involved in this case were created by an 1884 partition action dividing a larger piece of property into twelve smaller properties. Six of the smaller properties were numbered one through six. The other six were lettered A through F. Martin's chain for three of the smaller properties—C, D, and E—are at issue here.

The master erred in finding an easement by grant because nothing in the chain of title for C and E indicates an easement by grant in favor of Respondent's predecessors in title. There is quite literally no easement language in the chain of title for C. As for E, while the 1929 deed of other lots (1, 2, and 4) specifically includes right of way language over other property owned by the grantors—which at this point included E—as well as rights of way the grantors might have had over lands, this "other lands" language is only in the chain of title for 1, 2, and 4. It does not appear in the chain of title for E. A subsequent purchaser of E, such as Fletcher Martin in 1948 and all subsequent owners, would not have actual or constructive notice of an easement by grant over E because no easement is recorded in E's chain of title. *C.f. Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct. App. 2001) ("Property owners are charged with constructive notice of instruments recorded in *their chain of title*." (emphasis added)).

**Public Dedication**

Here as well, we agree with Martin that Respondent failed to meet its burden of proof to establish dedication of a public road. Our standard of review on this issue is different. *See Mack v. Edens*, 320 S.C. 236, 239, 464 S.E.2d 124, 126 (Ct. App. 1995) ("The determination of whether a roadway has been dedicated to the public is an action in equity."); *id.* ("As such, we have jurisdiction on appeal to find facts in accordance with our own view of the preponderance of the evidence."); *id.* (stating "proof of dedication must be strict, cogent, and convincing").

"Dedication requires two elements. First, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use. Second, there must be, within a reasonable time, an express or implied public acceptance of the property offered for dedication." *Id.* (citation omitted). "[T]he burden of proof

to establish dedication is upon the party claiming it." *Anderson v. Town of Hemingway*, 269 S.C. 351, 354, 237 S.E.2d 489, 490 (1977).

"No particular formality is necessary to effect a common law dedication." *Boyd v. Hyatt*, 294 S.C. 360, 364, 364 S.E.2d 478, 480 (Ct. App. 1988). "An intention to dedicate may be implied from the circumstances." *Id*. "Any act or declaration on the part of the dedicator which fully demonstrates his intention to appropriate [his] land to public use, or from which a reasonable inference of his intent to dedicate may be drawn, is sufficient." *Id*. (alteration by court) (quoting 23 Am. Jur. 2d *Dedication* § 27 (1983)). "However, absent an express grant, one who asserts a dedication must demonstrate conduct on the part of the landowner clearly, convincingly and unequivocally indicating the owner's intention to create a right in the public to use the property in question adversely to the owner." *Id*.

"South Carolina law recognizes two types of implied dedication—'one where the question of implied dedication arises from the sale of land with reference to maps or plats; the other when the dedication arises . . . from an abandonment to or acquiescence in public use.'" *Vick v. S.C. Dep't of Transp.*, 347 S.C. 470, 477, 556 S.E.2d 693, 697 (Ct. App. 2001) (alteration by court) (quoting *Shia v. Pendergrass*, 222 S.C. 342, 347, 72 S.E.2d 699, 701 (1952)). "Only the owner of a fee simple interest can make a dedication." *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 316, 433 S.E.2d 875, 883 (Ct. App. 1992). "The owner's intention to dedicate must be manifested in a positive and unmistakable manner." *Id*. at 317, 433 S.E.2d at 883. "A dedication need not be made by deed or other writing, but may be effectually made by acts or declarations." *Id.* "Intent to dedicate may also be implied from long public use of the land to which the owner acquiesces." *Id*.

> Nevertheless, dedication is an exceptional mode of passing an interest in land, and proof of dedication must be strict, cogent, and convincing. The acts proved must not be consistent with any construction other than that of a dedication, and dedication may not be implied from the permissive, sporadic, and recreational use of property. The record must contain evidence the owner of the property clearly, convincingly, or unequivocally intended to dedicate the property for public use.

*Mack*, 320 S.C. at 239, 464 S.E.2d at 126.

The record contains no evidence that Martin or any of her predecessors expressed an intention (much less a clear and unmistakable intention) to dedicate the road to the public. Here, the master determined Shady Grove Road became a public road based on general public use, the testimony of four witnesses who said the county maintained the road before 1969, and two maps that show the road as a public road.

We have already explained why public use cannot suffice—the law presumes neighborly accommodation in this sort of situation. *See Miller II*, 130 S.C. at 156, 125 S.E. at 299 ("[T]he rule requiring that in addition to proof of the continuous use of a road for 20 years or more in order to establish a prescriptive right, 'when it passes over uninclosed woodland it must also be shown that the user was adverse,' proceeds upon the theory, soundly grounded in conditions which are a matter of common knowledge in this country, that the user of a road through uninclosed woodland is, in effect, a user by license or permission of the owner of the land. Hence the mere fact of a public use of such a road for any length of time will not sustain a claim of public right by prescription in the way." (quoting *Miller I*, 125 S.C. at 291, 118 S.E. at 625)).

Three of the four witnesses who said the county maintained the road before 1970 were minors when they observed the supposedly county owned motor graters operating on the road, and the testimony of all four came more than forty-five years after they saw the motor graters. None of the four witnesses explained how they knew the motor graters belonged to Richland County, and one witness stated county employees would occasionally do favors for friends or for liquor.

Both of the maps, though created before 1970, were not created by Richland County, but instead by the United States Army Corps of Engineers, the Federal Works Agency, and the South Carolina State Highway Department. Our supreme court has previously explained "[t]he burden of proving a dedication is not met simply by introducing maps which show the alleged street." *Anderson*, 269 S.C. at 355, 237 S.E.2d at 490. We find these maps from third parties carry less weight than the county's right-of-way agent's testimony that the county did not have a public dedication past the gate.

When looking at the evidence in the record as a whole, it is manifest that Martin and her predecessors had no intention of dedicating the portion of Shady Grove Road passing over their property to the public. The record indicates the exact opposite intent—that the gate was erected to prevent people from using the road to do "devilment." We find by a preponderance of the evidence that Respondent did not show the public adversely used the road, as the record indicates the public

permissively used the road until the gate was installed in 1970, after which the only adverse users were Respondent, its predecessors, agents, and guests (and only after 2009, as discussed above).

**Conclusion**

Based on the foregoing, the master erred in finding any easement across Martin's property. We decline to address all other issues because the reasoning given above is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive). The master's order finding easements by grant, prescription, and public dedication is

**REVERSED.**

**KONDUROS, HEWITT, and VINSON, JJ., concur.**