# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

James L. Braswell, Sr., Respondent-Appellant,

v.

James F. Amick, Appellant-Respondent.

Appellate Case No. 2020-000458

———————

Appeal From Newberry County
Grace Gilchrist Knie, Circuit Court Judge

———————

Opinion No. 6054
Heard April 20, 2023 – Filed March 27, 2024

———————

**AFFIRMED**

———————

Karl Stephen Brehmer, of Brown & Brehmer, and James
Donald Floyd, of Gibbs Law Firm, LLC, both of
Columbia, for Appellant.

Jennifer Dowd Nichols and Samuel M. Price, Jr., both of
Nichols & Price, of Newberry, for Respondent.

———————

**MCDONALD, J.:** In this declaratory judgment action, James F. Amick argues the
circuit court erred in finding James L. Braswell, Sr.[1] had an appurtenant
prescriptive easement across Amick's land. Amick contends the circuit court used
an incorrect test in declaring the existence of the easement and failed to make

---

[1] Braswell chose not to file a final appellant's brief; therefore, his cross-appeal is
dismissed.

findings necessary to show Braswell's "use of the dirt road was open and notorious by clear and convincing evidence." We affirm.

**Facts and Procedural History**

Braswell sought a judgment declaring the existence of a right-of-way over Amick's property in order to access his farmland from Highway 76 in Newberry County. Braswell owns 120 acres (the Braswell Property) with no access to Highway 76; Amick owns a 17.08-acre tract along Highway 76 (the Amick Property). Both properties border a tract to the west known as the Ballentine Property.[2] The dirt road over which Braswell claims an easement runs across the Amick Property along the side of the Ballentine Property. However, title searches and surveys performed in connection with this litigation revealed a 12.5-foot gap between the Ballentine Property and the Amick Property; this gap property, owned by Sula Miller, was never conveyed to Amick. Thus, although Braswell sought a twenty-five-foot easement, the circuit court addressed only the 12.5-foot portion of the road on the Amick Property.

In 1964, Miller conveyed a 4.04-acre parcel and a three-acre parcel to L.K. Bedenbaugh. In 1966, Bedenbaugh conveyed his land to Henry Bickley; the property was described as bound "on the West by a dirt road which separates same from lands of Ballentine." Later that year, Bickley's estate conveyed approximately twenty acres to Bedenbaugh, including a seven-acre parcel described as bound "by a dirt road which separates the conveyed premises from the lands of Ballentine." In 1967, Bedenbaugh conveyed the land to Oscar Harley and again the deed described "a dirt road which separates the conveyed premises from the lands of Ballentine." In 1971, Harley conveyed the property to Steven and Lynn Gaston; this deed again referenced the dirt road. The Gastons conveyed the land to Grady Tarlton in 1972 and although the description did not reference the dirt road, it was the same land conveyed to the Gastons by Harley, other than a one-acre parcel the Gastons retained. In 1979, Grace Tarlton conveyed 17.08 acres to H.L. and Thelma Brock, including the land from the Gastons. This deed's property description incorporated by reference a 1979 plat prepared by Claude Johnson.[3]

---

[2] The Braswell family (and others) refer to the western parcel as the "Ballentine side" and the eastern parcel as the "Parr side."

[3] A 1964 plat, also prepared by Johnson, shows the 12.5-foot strip bordering the Ballentine Property. This 12.5-foot strip from the 1964 plat is referred to as a

On June 8, 1988, Amick and his wife purchased their tract from the Brocks. This deed describes the Amick Property as:

> All that certain piece, parcel or tract of land, consisting of 17.080 acres, more or less, located on U.S. Highway No. 76, in the County of Newberry, State of South Carolina, with the following buttings, boundings and delineations, to-wit: beginning at the northernmost point and running on a southeasterly direction along the right-of-way of U.S. Highway No. 76 for a distance of 268.43 feet to an iron pin; thence running in a southwesterly direction along the tract of land conveyed to Grace K. Tarlton by Grady Tarlton for a distance of 410 feet to an iron pin; thence running in an southeasterly direction along the tract of land conveyed to Grace K. Tarlton for a distance of 290 feet to an iron pin; thence running in a southwesterly direction along the right-of-way of a farm road and the lands now or formerly of Sula Miller Harley for a distance of 457.53 feet to an iron pin; thence running along the lands, now or formerly of Sula Miller Harley in the aggregate of 320.22 feet to an iron pin located in a pond; thence running in a northwesterly direction along the lands of James Braswell for a distance of 329.31 feet to an iron pin; thence running in a northeasterly direction for a distance of 887.27 feet along the lands of James Braswell to an iron pin; thence [] running in a northwesterly direction for a distance of 198.05 feet to an iron pin; thence running in a northeasterly direction along the lands of William Ballentine for a distance of 604.97 feet to an iron pin, the point of beginning. Reference is hereby craved to and incorporated as a part of this description to a plat entitled "Tarlton Tract", prepared by Claude E. Johnson, L.S., dated August 14, 1979, which plat is of record in the office of the Clerk of Court for Newberry County in Plat Book AU at page 14.
>
> ALSO, all our right, title and interest which we own in a twenty-five (25) foot right-of-way which is located on the eastern boundary of the property herein conveyed and on the eastern boundary of a 2.996 acre tract conveyed to Grace Tarlton September 7, 1979.

---

12.5-foot R/W. At trial, an expert testified "R/W" may have been a surveyors' annotation, and a dotted line indicates the surveyor did not actually measure the boundary.

This is the identical property conveyed to the grantors herein by deed of Grady Tarlton dated September 7, 1979, recorded in the office of the Clerk of Court for Newberry County in Deed Book 165 at page 6.

In the 1960s, Braswell began leasing several pieces of land from Sula Miller to grow feed for his existing dairy business. On June 20, 1972, Braswell purchased the property from Miller. The Braswell Property deed includes:

All that piece, parcel or tract of land containing one hundred twenty and eighty-one-hundredths (120.80) acres, more or less, situate, lying and being in Tax District No. 3, in the County of Newberry, State of South Carolina, said property being bounded by lands of Harold Long, by lands of William Ballentine; by lands of Sula S. Miller, and by lands of Henry Parr. This tract of land is more particularly described on a Plat made by Claude E. Johnson, L.S. 1373, surveyed May 1962-September 1964-October 1971, and recorded in the office of the Clerk of Court for Newberry County in Plat Book AG at page 28. This is a portion of the property conveyed to A.B. Miller and Sula S. Miller by deed dated March 14, 1960, and recorded in the office of the Clerk of Court for Newberry County in Deed Book 75 at page 575, and a portion of the property inherited by Sula S. Miller from the Last Will and Testament of A.B. Miller on file in the office of the Probate Judge for Newberry County.

On the western (or Ballentine) side of his property, Braswell grew row crops for feed for his dairy business. As long as Braswell's sons could remember, when they needed to reach the area containing these row crops, they accessed it through what is now the Amick Property. In 1984, Braswell constructed two ponds on his land; he later installed an irrigation system.

Shortly after Amick purchased his property in 1988, he installed gates across the dirt road because he began noticing trash in certain areas and he needed to keep his horses from getting loose. Braswell, who purchased gates in large quantities, gave Amick the gates for the road. Amick started locking the gates after some property was stolen, but he gave Braswell a key.

In 2015, Amick became concerned about Braswell's employees driving too fast down the dirt road. Amick also complained that trucks coming to and from the Braswell Property had started inching further onto his land.

In 2017, Braswell filed this action seeking a judgment to declare the dimensions of the right-of-way and easement he claimed over the Amick Property. He further asked that the court enjoin Amick "and his heirs and assigns from interfering in any manner with" Braswell's use of the right-of-way "for the purpose of access, ingress and egress" from the Braswell Property to Highway 76. Amick denied the existence of any such easement or right-of-way. Amick admitted that while he had previously given Braswell permission to use the dirt road to access his farmland, he later revoked this permission.

The first nonjury trial of this matter began in December 2018, but the circuit court ultimately ordered a new trial, and Braswell appealed. Braswell later withdrew that appeal, which this court dismissed in April 2019.

On October 1, 2019, Braswell filed a motion seeking an injunction pendente lite and advancement on the trial calendar. In January 2020, the circuit court granted Braswell a temporary restraining order prohibiting Amick from obstructing Braswell's use of the claimed right-of-way. The court further ordered Braswell and his employees to lock the gate each time they entered and exited Amick's property.

Following a second nonjury trial, the circuit court declared Braswell had an appurtenant prescriptive easement over Amick's property. The circuit court found Braswell demonstrated by clear and convincing evidence that he met all elements necessary to establish the easement. The court held Amick took his property subject to Braswell's easement and Amick was not a purchaser for value without notice. Moreover, Amick could not assert the defense of permissive use because there was evidence in the record that Amick objected to Braswell's use of the dirt road. Finally, the circuit court found Braswell's construction of the two ponds in 1984 did not unreasonably expand the scope of the easement because even Braswell's largest piece of equipment, a twenty-foot wide combine, could navigate the road and stay within the easement. Amick appealed these findings.

**Standard of Review**

"[T]he determination of the existence of an easement is a question of fact in a law action." *Simmons v. Berkeley Elec. Coop., Inc.*, 419 S.C. 223, 236, 797 S.E.2d 387, 394 (2016) (alteration by court) (quoting *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987)); *see also Pittman v. Lowther*, 363 S.C. 47, 50, 610 S.E.2d 479, 480 (2005) ("The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury.").

**Analysis**

Amick argues the circuit court erred in finding Braswell had a prescriptive easement from Highway 76 across his property. He contends the circuit court did not properly use the test for prescriptive easements set forth in *Simmons*, 419 S.C. at 236, 797 S.E.2d at 394, and failed to address whether Braswell's use of the purported easement was open and notorious. Amick further argues the circuit court erred in finding Braswell's twenty-year period of continuous use began in 1964 when Miller sold the 4.04-acre tract to Bedenbaugh because Braswell cannot tack the time he leased the property from Miller to establish twenty years of continuous use from 1964 to 1984. Amick maintains that because Miller must have given Braswell permission to use the road prior to her selling the property to Bedenbaugh in 1964, Braswell's use could not ripen to a prescriptive easement. We disagree.

"An easement is a right given to a person to use the land of another for a specific purpose." *Bundy v. Shirley*, 412 S.C. 292, 304, 772 S.E.2d 163, 169 (2015). "A prescriptive easement is not implied by law but is established by the conduct of the dominant tenement owner . . . ." *Boyd v. BellSouth Tel. Tel. Co.*, 369 S.C. 410, 419, 633 S.E.2d 136, 141 (2006). "To establish a prescriptive easement, the claimant must prove by clear and convincing evidence: '(1) the continued and uninterrupted use or enjoyment of the right for a period of 20 years; (2) the identity of the thing enjoyed; and (3) the use [was] adverse under claim of right.'" *Simmons*, 419 S.C. at 229, 797 S.E.2d at 390 (alteration by court) (quoting *Darlington County v. Perkins*, 269 S.C. 572, 576, 239 S.E.2d 69, 71 (1977)).

"To satisfy the twenty-year prescriptive period, the claimant can tack his use to use by prior owners, provided the prior owners' use also satisfies the prescriptive easement elements." *Carolina Ctr. Bldg. Corp. v. Enmark Stations, Inc.*, 433 S.C. 144, 155, 857 S.E.2d 16, 22 (Ct. App. 2021).

> Successive uses of land by different persons may be tacked, or added together, to satisfy the prescriptive period. Tacking is permitted when the successive adverse users are in privity of estate. Although the requirement of privity has been variously defined, the prevailing view is that there must be some relationship whereby the successive users have come into possession under or through their predecessors in interest. It follows that [a] claimant may not tack the [the] claimant's adverse use to that of strangers, nor may a claimant tack the claimant's adverse use to that of a predecessor in title when the predecessor's

usage terminated before claimant acquired the land.  Moreover, a claimant cannot tack adverse use with prior adverse use when intervening parties used land with permission.  Nor is tacking permissible when it is unclear that use by [the] claimant's predecessor was adverse.  In order to establish continuity of use by tacking, a claimant must show that predecessors in title actually used the alleged easement.

*Bundy*, 412 S.C. at 313–14, 772 S.E.2d at 175 (footnotes omitted by court) (quoting James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land*, § 5:19).

In *Simmons*, our supreme court clarified the test to be used in analyzing a prescriptive easement claim.  419 S.C. at 230, 797 S.E.2d at 391.  The court explained, "[W]e hold adverse use and claim of right cannot exist as separate methods of proving the third element of a prescriptive easement as the two terms are, in effect, one and the same.  Thus, we overrule those decisions that express a contrary conclusion of law."  *Id.* at 232, 797 S.E.2d at 392.  The court concluded South Carolina courts should apply the test for adverse use when analyzing the third element of a prescriptive easement.  *Id.* at 232–33, 797 S.E.2d at 392.  "However, because the 'continuous' and 'uninterrupted' elements for adverse use are already required to establish a prescriptive easement, the subtest for 'adverse use' only further requires the claimant's use be 'open' and 'notorious.'"  *Id.* at 233, 797 S.E.2d at 392.  Thus, the supreme court simplified the test as follows: "In order to establish a prescriptive easement, the claimant must identify the thing enjoyed, and show his use has been open, notorious, continuous, uninterrupted, and contrary to the true property owner's rights for a period of twenty years."  *Id.* "'Open' generally means that the use is not made in secret or stealthily.  It may also mean that it is visible or apparent."  *Id.* (quoting Restatement (Third) of Property (Servitudes) § 2.17(h) (2000)).  "'Notorious' generally means that the use is actually known to the owner, or is widely known in the neighborhood."  *Id.* at 234, 797 S.E.2d at 392 (quoting Restatement (Third) of Property (Servitudes) § 2.17(h) (2000)).

In *Kelley v. Snyder*, this court addressed whether the time a property owner leases land prior to purchase may be used to establish the twenty years of continuous use required for a prescriptive easement.  396 S.C. 564, 722 S.E.2d 813 (Ct. App. 2012).  Kelley purchased his property in 1977, and the adjacent landowners (Respondents) purchased their land—which they had previously leased—in 1989.  *Id.* at 569, 722 S.E.2d at 815–16.  Kelley's property description did not mention it

was subject to an easement, but Respondents' deed included an easement for a twenty-foot access road from the highway across Kelley's property.  *Id.* at 569, 722 S.E.2d at 815–16.  In 2008, Kelley sought injunctive relief, claiming Respondents had impermissibly "created a twenty-foot private roadway on his property."  *Id.* at 571, 722 S.E.2d at 816.  Considering whether Respondents used the road against a claim of right, this court explained:

> Kelley asserts the master erred in ruling that the claim of right existed against both Kelley and his grantor for more than twenty years because there was no evidence that any claim of right existed prior to the deed to Respondents in 1989.  Respondents purchased their land on June 29, 1989, and Kelley filed his complaint on June 4, 2008; therefore, Respondents' claim of right as landowners extends back just shy of nineteen years.  Regardless, "[a] party may 'tack' the period of use of prior owners in order to satisfy the 20-year requirement." *Morrow* [*v. Dyches*, 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct. App. 1997)] (citing 25 Am.Jur.2d Easements and Licenses § 70 (1996)). "[T]he time of possession may be tacked not only by ancestors and heirs, but also between parties in privity in order to establish the 20-year period." *Getsinger v. Midlands Orthopaedic Profit Sharing Plan*, 327 S.C. 424, 430, 489 S.E.2d 223, 226 (Ct. App. 1997). Tacking of periods of prescriptive use is permitted where "there is a transfer between the prescriptive users of either the inchoate servitude or the estate benefitted by the inchoate servitude." *Matthews v. Dennis*, 365 S.C. 245, 249, 616 S.E.2d 437, 439 (Ct. App. 2005) (quoting Restatement (Third) of Property: Servitudes § 2.17 (2000)). If tacking is used, the use by the previous owners must have also been adverse or under a claim of right. *See Morrow*, 328 S.C. at 528, 492 S.E.2d at 424.  Therefore, tacking the [prior owners'] claim of right over the road to Respondents' claim of right, Respondents have well over twenty years of use of the roadway.

*Id.* at 575, 722 S.E.2d at 819.

In the current matter, Braswell's son, James Braswell, Jr., testified that for as long as he could remember, his family used the dirt road on the Amick Property whenever they needed to access the Ballentine side of their farm.  James explained that after installation of the irrigation system, the Braswells and their employees started using the road more frequently because the irrigation system's pumps required regular refueling.  Although James admitted farm workers could access

the Braswell Property through a farm road on the Parr side, he clarified that this road is too narrow to transport large farm equipment. And, some of the farm equipment is too heavy to cross the pond dams on the Parr side farm road route.

Another of Braswell's sons, Mark Wayne Braswell, testified he began working for his father in 1979 or 1980 at age fourteen; he is now responsible for cultivating and maintaining row crops. Mark explained his family accessed the Braswell Property from roads on both sides of the property, but certain pieces of farming equipment were too heavy or too wide to use the alternate route on the Parr side. According to Mark, to safely maneuver the combine requires a road width of approximately twenty feet. The Braswells grew row crops along the Ballentine side of their property, and workers regularly and frequently used the dirt road across the Amick Property to access these crops and transport large farming equipment. For as long as Mark could remember, when the Braswells needed to access that area, they used the dirt road on the Amick Property.

Mark further testified that Amick put up gates to block the road shortly after Amick bought the property. Although Mark had a key, there were occasions when the lock had been changed and Mark had to remove the gates from their hinges to reach the Braswell Property. Mark believed Amick installed the gates to corral his animals and keep them away from the Braswell crops.

According to Braswell, the dirt road has existed since at least the mid-1960s when he first started leasing land from Miller.[4] Braswell recalled that Johnson's father used the dirt road to access his airplane, and Braswell leased land from Miller in the area where Johnson's father kept the plane. He noted the posts on either side of the road had been there since before Amick bought the property, but he could not remember which prior owner erected the posts. Braswell had no problem with Amick installing the gates until Amick started changing the locks.

Amick's ex-wife testified the Amick Property was overgrown when the family purchased it and it took Amick and their son two to three years to clear the land; she claimed there was no way to drive through the property prior to this clearing. She said Amick put up the gates around 1994 "[b]ecause he liked his privacy and

---

[4] In 1964, Miller conveyed property to the southeast of the Braswell Property and reserved an easement for ingress and egress to what is now the Braswell Property. However, there is no evidence to suggest Miller's right to use the easement was ever assigned.

he didn't want people driving on his land." Amick's friend, Mark Richardson, also testified the property was overgrown and that it took Amick and his son two or three years to clear it.

Amick's wife testified traffic on the road increased significantly in 2007. She noted, "Not only trucks, there were other people. There were people, we actually had one that had a fishing boat in the back of their truck that came out and we have had men and women, older men and women, several people have come across our property."

Amick testified that when he bought the land, it was overgrown and you could only pull off the driveway a little. However, he admitted a four-wheel drive vehicle could access the property once he and his son started clearing it.

Although Amick and his witnesses claimed the land was overgrown when Amick bought it in 1988—and that it took two to three years to clear it—photos in the record show the dirt road existed prior to Amick's purchase of the tract. The road is visible in aerial photographs of the property taken in 1981 and 1989. Amick admitted he initially gave Braswell permission to cross his property—until Braswell began "abusing the situation." Eventually, Amick changed the locks to keep people out, including "[t]he Braswells, everybody that was going fishing, people going hunting coming after dark, people of the public in general." Amick also complained that Braswell and others using the route began inching further and further onto his property. So, in 2018, he parked trailers across the dirt road to keep people from using it.

Amick contends that because Miller must have given Braswell permission to use the road while she owned the property (before her 1964 sale to Bedenbaugh), Braswell's use cannot ripen to a prescriptive easement. However, Braswell testified he started leasing land from Miller "in the middle of the late '60s." Miller's grandson (Johnson) testified that when he was nine or ten in 1962 or 1963, he visited his grandmother's property and used the road to access his father's airplane. Johnson believed Braswell was not cultivating the fields in the early 1960s when his father had the airplane. However, Braswell recalled Johnson's father driving to the airplane. It is unclear from the record whether Miller had already conveyed the 4.04 acres at issue (and now part of the Amick Property) prior to Braswell's leasing the property and using the dirt road. Further, there is no evidence Braswell had permission from any other prior property owner to use the dirt road. Therefore, we find the record lacks evidence of permissive use sufficient to render erroneous the circuit court's finding of a prescriptive easement.

Nor was the circuit court's finding that Braswell had a 12.5-foot easement over the Amick Property controlled by an error of law. Although the circuit court did not specifically use the words "open" and "notorious" in its order, it addressed whether Braswell used the easement "in a manner that was adverse and under a claim of right contrary to" the owners of the Amick Property. *See Simmons*, 419 S.C. at 231, 797 S.E.2d at 391 ("[T]he third element of a prescriptive easement should be interpreted as requiring the claimant's use be adverse or, in other words, under a claim of right contrary to the rights of the true property owner."). As the circuit court's finding tracks the supreme court's *Simmons* language and is supported by evidence in the record, we disagree with Amick's contention that the circuit court's failure to use the terms "open and notorious" constitutes reversible error.

In sum, we find the evidence in the record supports the circuit court's finding that Braswell has a prescriptive easement. Aerial photos from the 1980s show a dirt road or clearing on the Amick Property running along the side of the Ballentine Property and ending at the Braswell Property, even though Amick claims the entire property was overgrown and inaccessible at that time. These photographs support Braswell's claim and the circuit court's finding that Braswell was able to continuously use the road. And, because the road goes directly onto the Braswell Property from the Amick Property, we find Braswell's use of the dirt road was visible, apparent, and discoverable by ordinary diligence. *See Taylor v. Heirs of William Taylor*, 419 S.C. 639, 651, 799 S.E.2d 919, 925 (Ct. App. 2017) ("For possession to be open and notorious, 'the legal owner need not have actual knowledge the claimant is claiming property adversely, [but] the hostile possession should be so notorious that the legal owner by ordinary diligence should have known of it.'" (alteration by court) (quoting *Jones v. Leagan*, 384 S.C. 1, 13–14, 681 S.E.2d 6, 13 (Ct. App. 2009)).

**Conclusion**

Based on the foregoing, the circuit court's order declaring Braswell has a prescriptive easement over the Amick Property is

**AFFIRMED.**

**THOMAS and HEWITT, JJ., concur.**